PETTINE, Senior District Judge,
dissenting.
I suspect that a common reaction to the majority opinion will be to wonder why the Nadlers did not respond to BayBank’s motion for summary judgment with the expert testimony of a professional furniture liquidator or simply with stronger, more specific affidavits of their own — in essence, with a stronger case. It appears that it would have been a relatively simple task to have done so, which may explain the tone of annoyance that pervades the majority opinion. But before criticizing how well the Nadlers performed their task, we must be fully cognizant of our own: not to determine if the Nadlers established their best case but to determine if they established a case merely adequate to survive BayBank’s motion. To have done so, they need only have put forth enough evidence to support *186 a judgment in their favor if the case went to trial. Illinois v. Climatemp, Inc., 91 F.R.D. 252, 254 (N.D.Ill.1981); Wade v. New York Telephone Co., 500 F.Supp. 1170, 1177 (S.D.N.Y.1980) (both cases citing 10A Wright, Miller & Kane, Federal Practice and Procedure § 2727).[1] The effect of the majority opinion, therefore, is to hold that no reasonable jury could reach a verdict in the Nadlers’ favor based upon the evidence that was before the district court. As Judge Coffin explained some years ago, “[T]he standard of review is a rigorous one and not even one chink in the armor of decision can be vulnerable to the question: taking the facts and inference most favorable to the losing party, would a trier of fact nevertheless have to find against him?” Rogen v. Ilikon Corp., 361 F.2d 260, 266 (1st Cir.1966). Or, to put the matter another way, “[o]nly when the evidence is such that it is clear the jury would have none to go on, though they believed that [evidence] unfavorable to the movant for summary judgment, can the motion be sustained and a jury trial denied.” Firemen’s Mutual Insurance Co. v. Aponaug Manufacturing Co., 149 F.2d 359, 363 (5th Cir.1945) (quoted at 10 Wright, Miller & Kane, Federal Practice and Procedure § 2713.1, at 619 (1983)). See also Moore’s Federal Practice § 56.15[8], at 56-642 (2d ed. 1976). I disagree with the majority because I believe that, even on the admittedly slim evidence presented by the Nadlers, a reasonable jury could have reached a verdict in their favor.
Crucial to the reasoning of the majority opinion is its belief that a case of gross underpricing at a furniture liquidation sale can be made out only by expert testimony. And because the majority steadfastly refuses to recognize Meriba Nadler as an expert, her testimony with regard to this allegedly gross underpricing is inadmissible and therefore without effect for Rule 56(c) purposes. Or so the argument goes. In the first place, I disagree with the per se rule apparently laid down by the majority that expert testimony is always required to establish that a creditor set the prices for a liquidation sale egregiously low. Certainly, were we dealing here with the liquidation of nuclear reactor components, computer software, or other goods whose value was in general unknown to the layperson, this case would be on a very different footing. Instead, this particular liquidation involved only furniture. The majority admits that Nadler established a wholesale cost of her inventory of about $100,000, Appendix at 856, and it is uncontested that the liquidation sale’s gross Receipts were only $42,000. In my opinion, this discrepancy alone is sufficient to rebut Click-man’s testimony that the inventory pricing was “very well done” and that, by implication, the sale’s revenues were adequate. It cannot be that when we are dealing with more-or-less ordinary merchandise such as furniture that special expertise is always necessary to recognize a case of grossly inadequate pricing and receipts. Here, it would not be unreasonable for a jury to conclude that the figures alone tell the story. Cf. California Airmotive Corp. v. Jones, 415 F.2d 554, 555-56 (6th Cir.1969) (where an airplane had an original retail price of $100,000 and an original wholesale value of $40,000, its resale after repossession for $31,000 and created a triable issue of fact as to commercial reasonableness precluding the granting of summary judgment against the appellant debtor).
Even if one were to conclude that the discrepancy between the inventory’s wholesale value and the liquidation’s receipts was in itself insufficient to rebut Glick-man’s testimony, one may nevertheless conclude that the pricing and receipts were inadequate from Meriba Nadler’s testimony that the “going-out-of-business market va *187 lue” of the inventory was more than $100,-000. Appendix at 857. I infer from the majority’s opinion that they would exclude this testimony as inadmissible under Fed.R.Evid. 701, which states:
If the witness is not testifying as an expert, his testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of his testimony or the determination of a fact in issue.
“The modern trend favors the admission of opinion testimony, provided that it is well founded on personal knowledge and susceptible to specific cross-examination.” Teen-Ed, Inc. v. Kimball International, Inc., 620 F.2d 399, 403 (3d Cir.1980). The majority obviously believes that Nadler did not possess sufficient personal knowledge to testify about liquidation value (“She advanced ... no single instance of any personal connection with liquidation sales, either directly or indirectly.”), despite her sworn response (to a question about the basis for her allegation that the furniture was grossly underpriced) that she was a “furniture person” with “extensive experience” who “[knew] about these things.” Appendix at 589, 856. Here the majority has misperceived the standard to be applied.
[T]he judge retains the power to reject the evidence if it could not reasonably be believed — i.e., if as a matter of law no trier of fact could find that the witness actually perceived the matter about which he is testifying.... “But where [the witness] swears that he has personal knowledge of a matter of which it is merely very unlikely that he was a percipient witness, his testimony will stand and may be credited by the trier, unless the opponent on cross-examination secures disclosure of facts demonstrating that his knowledge was second-hand or inferred knowledge.”
3 Weinstein’s Evidence § 602[02] (1982) (footnotes omitted) (quoting Morgan, Basic Problems of Evidence 59-60 (1962)). Accord, Adkins v. Dirickson, 523 F.Supp. 1281, 1284 (E.D.Pa.1981) (“A witness is deemed competent to testify unless it is nearly impossible that he had first-hand observation.”).
Nadler swore that she had knowledge of furniture liquidation pricing. The question then becomes whether BayBank discharged its own burden by “securing] disclosure of facts demonstrating that [her] knowledge was second-hand or inferred knowledge.” Here, the majority opinion, which scrutinized Nadler’s deposition with such care for shortcomings in the plaintiffs’ case, seems to have overlooked the defendant’s failure to elicit from Nadler that her testimony was based on second-hand knowledge, if indeed it was. The majority opinion .does quote the following exchange from Nadler’s deposition:
Q. Have you ever seen it done in a bankruptcy liquidation sale before?
A. Specifically, let’s see. I’m not sure. I’ve heard this discussed many times, that it is done, but I can’t tell you specifically what companies.
Appendix at 860.
The “it” to which both question and answer refer, however, is the practice of padding the inventory, not her personal observation of liquidation sales themselves. Assuming that Nadler’s answer establishes conclusively that she was without personal knowledge of the padding practice, the exchange does not satisfy BayBank’s burden of rebutting her testimony that she had personal knowledge of furniture liquidation pricing. Accordingly, I must conclude that Nadler’s deposition reflects personal knowledge sufficient to meet admissibility requirements in general and, more particularly, for the purposes of opinion testimony by a lay witness under Rule 701.
Establishing Nadler’s personal knowledge of furniture liquidation pricing does not necessarily render her opinion testimony admissible, however. The First Circuit does not appear to have addressed the question directly, but the Fifth Circuit has set out what may be the most fully articu *188 lated criteria for admissibility under Rule 701:
This Court has noted three elements which must be present for lay opinion evidence to be admissible under Rule 701. Lubbock Feed Lots, Inc. v. Iowa Beef Processors, 630 F.2d 250 (5th Cir.1980). First the witness may have “personal knowledge of the facts from which the ... opinion is said to derive.” Second, a “rational connection” must exist between the opinion and the facts upon which it is based; or put another way, “the opinion ... must be one that a normal person would form from those perceptions.” Finally, “the opinion ... must be helpful either in understanding the testimony or in determining a fact in issue.” Id. at 263. The fact that an opinion goes to an “ultimate fact” does not necessarily preclude its admissibility under Rule 701. If these requirements are satisfied, a layman can under certain circumstances express an opinion even on matters appropriate for expert testimony. See Farmer v. Paccar, Inc., 562 F.2d 518, 528-29 (8th Cir.1977); Randolph v. Collectramatic, Inc., 590 F.2d 844, 848 (10th Cir.1979).
Soden v. Freightliner Corp., 714 F.2d 498, 511 (5th Cir.1983). In Soden, one Lasere, a service manager responsible for the daily maintenance of trucks belonging to the defendant manufacturer, observed in the normal course of his duties holes or cuts in the defendant’s trucks’ fuel tanks near some pointed brackets. In a products liability action based upon a post-collision fuel ignition fire involving one of the trucks, Lasere expressed his opinion as a layman that the brackets caused the holes, although he did not see any of the accidents firsthand. Holding that Lasere’s conclusion was admissible, the Fifth Circuit stated:
Lasere’s conclusion was rationally supported and would have been apparent to a “normal person” in his position. His additional conclusion that this situation was “dangerous” was also rational. No great leap of logic or expertise was necessary for one in Lasere’s position to move from his observation of holes in Freightliner fuel tanks at the location of the step brackets, and presumably caused by them, to his opinion that the situation was dangerous. His testimony on this point did constitute an opinion which might have better been given by one more formally an expert; however, it had a strong basis both in his observation and in his experience.
Id. at 512. To be sure, the admissibility of this testimony was boosted when the defendant’s counsel “admitted at oral argument [that] Lasere was a ‘practical expert’ in the field of trucks, if not an expert in their design.” Id. Nevertheless, the opinion reflects a willingness to allow rational inferences by lay witnesses from their personal knowledge. At least two other circuits have adopted a similar functional approach. See Joy Manufacturing Co. v. Sola Basic Industries, Inc., 697 F.2d 104, 110-12 (3d Cir.1982) (holding that, in breach of warranty and misrepresentation action brought against furnace manufacturer, trial court abused its discretion in striking testimony of plaintiff’s supervisor of production control insofar as he expressed his nonexpert opinion concerning the percentages of plaintiff’s losses attributable to furnace problems); Greenwood Ranches, Inc. v. Skie Construction Co., 629 F.2d 518, 522 (8th Cir.1980) (holding that, in action based on negligence, breach of contract, and breach of warranty by farm corporation against installer of irrigation system and others, nonexpert opinion testimony (by member of family that owned plaintiff corporation) concerning crop losses caused by malfunctioning of irrigation system was admissible). See also Teen-Ed, Inc. v. Kimball International, supra, 620 F.2d at 403-04; Farner v. Paccar, Inc., 562 F.2d 518, 528-29 (8th Cir.1977); United States v. Walker, 495 F.Supp. 230 (W.D.Pa.1980).[2]
*189 In this case, I think there is little doubt that Nadler’s testimony concerning the allegedly gross underpricing of her store’s inventory would be admissible under the Fifth Circuit’s Lubbock Feed Lots test. She swore that she was testifying from personal knowledge, an assertion not rebutted by BayBank, as explained above. There is obviously a “rational connection” between this opinion and her “extensive experience” in the furniture business generally and her knowledge of the wholesale cost of her inventory and its fair market value specifically, knowledge that the majority acknowledges. Finally, I think that even the majority would agree that her opinion would be at least somewhat “helpful ... in determining a fact in issue.” I conclude, therefore, contrary to the majority, that her nonexpert opinion testimony on this point is admissible.
With or without Nadler’s opinion testimony, therefore, it is my belief that the plaintiffs established the possibility that Bay-Bank’s pricing of their inventory was unreasonably low. I agree with the majority, however, that “although the price obtained may be one relevant factor, a plaintiff must point to specific deficiencies in the conduct of the sale that render it commercially unreasonable” under UCC § 9-507(2). To be specific, that section states that if the secured party has sold the collateral “in the usual manner” he is deemed to have acted with commercial reasonableness. Accordingly, in order to have survived the motion for summary judgment, the Nadlers also must have shown that whether or not Bay-Bank conducted the furniture liquidation “in the usual manner” of such dispositions was also a triable issue of fact.
Nadler testified that BayBank refused to permit additional furniture to be brought in and sold at the liquidation, a practice she identified as a custom and practice in such sales. Clearly enough, this allegation, if proven at trial, would be probative on the issue of whether the sale was run in “the usual manner.” The majority dismisses this testimony about padding at furniture liquidation sales as not based on Nadler’s personal knowledge. One need not rely, however, on Nadler’s deposition alone for this question to rise to the status of a triable issue. A January 23, 1978 order by the federal bankruptcy judge authorizing a *190 trustee’s sale of Port’s inventory stated that the trustee “is hereby authorized to conduct a sale of the bankrupt’s assets upon the terms and conditions as are more particularly set forth in the [agreement signed by the trustee, BayBank, and a professional liquidator], a copy of which is hereto annexed and incorporated herein.” Appendix at 325. The agreement provides in part that “by order of the Court” the liquidator “shall order such additional merchandise as it deems necessary and proper to effect the purposes of this Agreement (viz: to generate monies to attempt an adequate return to the creditors).” Id. at 326. As part of the bankruptcy judge’s order, this language is admissible under Fed.R.Evid. 803(8)(C). Cf. Chandler v. Roudebush, 425 U.S. 840, 863 n. 39, 96 S.Ct. 1949, 1961, 48 L.Ed.2d 416 (1976) (“Prior administrative findings made with respect to an employment discrimination claim may, of course, be admitted as evidence at a federal-sector trial de novo. See Fed.Rule Evid. 803(8)(C).”); Bulls v. United States, 356 F.2d 619, 625 (5th Cir.1966) (record in proceedings for foreclosure of FHA mortgage admissible to establish existence of deficiency judgment).
The liquidator who signed this agreement did not in fact conduct the liquidation sale. Nevertheless, the fact that BayBank signed an agreement that clearly contemplated padding an inventory suggests that the practice may well have been part of running a furniture liquidation sale in “the usual manner.” Perhaps here, too, the majority would say that this “is not affirmative evidence that it was unreasonable not to have [padded the inventory] in this instance,” as the majority says of Nadler’s testimony. If so, the majority misconceives the burden here. The Nadlers need show only a triable issue of fact as to whether BayBank’s conduct of the sale was within the bounds of custom and practice, a showing that, in my opinion, they have made. Then BayBank may explain to the jury why it deemed padding unnecessary “in this instance,” an explanation that the jury may choose to find reasonable or not. What matters at this juncture is that the agreement signed by BayBank could provide part of the basis for a jury’s conclusion that the sale was not conducted with commercial reasonableness.
I find it surprising that the majority gives any attention whatsoever to the “rumor that the Attorney General of Massachusetts was investigating whether padded sales might constitute unfair or deceptive trade practices.” Setting aside the serious admissibility problems of this evidence (which consists solely of inadmissible hearsay and the legal conclusion of a non-lawyer), I think that it is clear that, at most, this rumor could have served as an explanation for BayBank’s refusal to pad and been offered to the jury for its consideration, as explained above.
Other evidence also suggests that the liquidation sale may not have been conducted in accordance with custom and practice. An internal memorandum shows that Bay-Bank originally contemplated running “a G.O.B. [going-out-of-business sale] for three months in anticipation of liquidating the total inventory loan,” Appendix at 685, evidence that is admissible under Fed.R. Evid. 803(6). In fact, however, the liquidation sale lasted only two days, during which, as one bank officer has admitted, some prices were lowered “in order to move [the merchandise], so that we could close it up in two days,” as opposed to running it for a week. Appendix at 916. As the bank officer’s deposition shows, however, the sale had no shortage of customers. Id. at 917-18. I think that the very brief duration of the liquidation may also raise a question of whether the sale was conducted in a commercially reasonable manner.
Again, I must emphasize my recognition that the evidence presented by the Nadlers does not constitute a strong case of commercial unreasonableness. But I cannot say in good conscience that, “taking the facts and inferences most favorable” to the Nadlers, a jury would nevertheless have to find against them. This case should have gone to trial. Accordingly, I dissent.

. This standard is the "genuine” as opposed to the "material" branch of the "'bifurcated standard which the party opposing summary judgment must meet to defeat the motion."’ See Emery v. Merrimack Valley Wood Products, Inc., 701 F.2d 985, 990 (1st Cir.1983) (quoting Hahn v. Sargent, 523 F.2d 461, 464 (1st Cir.1975), cert. denied, 425 U.S. 904, 96 S.Ct. 1495, 47 L.Ed.2d 754 (1976)). There is no question that the issues discussed infra are material, since they could affect the outcome of the litigation. See id.

. Also, I note the following language from Kapp v. Ballantine, 380 Mass. 186, 193 n. 7, 402 N.E.2d 463 (1980), a case cited by the majority:
It is well established that the professional specialty of a medical practitioner offered as a witness need not be precisely and narrowly *189 related to the medical issues of the case. Thus, it has been held that a judge, in his discretion, properly admitted the opinions of a general practitioner in a case which related to specialized medical issues. Nevanranta v. Koski, 335 Mass. 760, 138 N.E.2d 376 (1956); Preston v. Cianci, 321 Mass. 297, 298-299, 73 N.E.2d 246 (1947).
The rationale behind this language is the same as that of Lubbock Feed Lots and the other cases cited above: one who has a general knowledge of a field may express admissible opinion testimony that is rationally related to a more "specialized" issue. The majority, no doubt, would distinguish the instant case by viewing furniture liquidation as a field completely separate from furniture wholesale and retail. Or, perhaps the majority would distinguish the language of Kapp v. Ballantine on the "simpleness" of the testimony of a furniture store owner as compared to that of a physician. Obviously, I would not find either distinction meaningful. I will acknowledge, however, some common sense limits to Lubbock Feed Lots 's functional approach to nonexpert opinion testimony. These limits might be illustrated by the facts of a somewhat older case, Stevenson v. United States, 378 F.2d 354 (2d Cir.1967). In Stevenson, the appellate court affirmed the trial court’s exclusion of "expert” testimony that the plaintiff/taxpayer sought to introduce with reference to the financial aspects customary in the liquidation of a phonograph record mail order club. "The court below rejected the offered testimony because the witnesses, though having general knowledge of the record and book mail order business, had insufficient knowledge or experience with the liquidation of record clubs to qualify as experts in that area.” Id. at 356. The appellate court stated that it could "not say that the trial court abused its discretion by excluding this testimony." Id. In Stevenson's context of fairly complex tax litigation, see Stevenson v. United States, 250 F.Supp. 647 (S.D.N.Y.1965), the appellate court’s affirmance on this point was eminently reasonable. My point, however, is that the facts of Stevenson might also serve as one boundary of Lubbock Feed Lots. That is, had Stevenson's plaintiff sought to introduce the same testimony as the opinion of a nonexpert, the testimony should nevertheless have been excluded because it would have depended on too great a “leap of expertise.” Quite simply, I view the facts of the instant case as more akin to those of Lubbock Feed Lots, Joy Manufacturing, and Greenwood Ranches than to those of Stevenson.