Martin EISENBERG and Arthur Nissen, on behalf of themselves and all others similarly situated

v.

Frederick M. GAGNON, Bernard A. Boyers, David E. Wasserstrom, Charles Lieberman, Edward Hershenhorn, David Weinstein, John W. Pelino, Morris L. Chucas, Tom P. Monteverde, Wasserstrom & Chucas, and Pelino, Wasserstrom, Chucas & Monteverde, P.C.

v.

GELROD, FOX AND CO., Clarence Rainess & Co., Seidman and Seidman, Gruntal and Co., Marvin Welsch and Jack Panich.

Appeal of Martin EISENBERG and Arthur Nissen, in Nos. 84–1214 & 84–1225.

Appeal of David E. WASSERSTROM, in No. 84–1261.

Nos. 84–1214, 84–1225 and 84–1261.

United States Court of Appeals, Third Circuit.

Argued Feb. 4, 1985.

Decided June 28, 1985.
Rehearing and Rehearing In Banc Denied July 26, 1985.
As Amended July 26, 1985.

Michael R. Needle, Lawrence E. Feldman, Needle, Feldman & Herman, Philadelphia, Pa., Richard D. Greenfield, David B. Zlotnick (Argued), Greenfield, Chimicles & Lewis, Haverford, Pa., for appellants and cross-appellees Martin Eisenberg and Arthur Nissen.

Edward C. Mengel, Jr. (Argued), Margaret A. Skelly, White and Williams, Philadelphia, Pa., for appellee and cross-appellant David E. Wasserstrom.

James M. Marsh (Argued), Daniel J. Ryan, Daniel P. Lynch, LaBrum and Doak, Philadelphia, Pa., for appellee Pelino, Wasserstrom, Chucas & Monteverde, P.C.

Richard M. Meltzer, Kenneth S. Siegel (Argued), Mesirov, Gelman, Jaffe, Cramer & Jamieson, Philadelphia, Pa., for appellee Clarence Rainess & Co.

Wilbur Greenberg (Argued), Philadelphia, Pa., for appellees Charles Lieberman and David Weinstein.

Before SEITZ, GIBBONS and SLOVITER, Circuit Judges.

## OPINION OF THE COURT

SLOVITER, Circuit Judge.

### I.

### FACTS AND PROCEDURAL HISTORY

Plaintiffs Martin Eisenberg and Arthur Nissen were investors in two limited partnerships, Bar Associates (Bar) and Cay Associates (Cay), which were part of a series of limited partnerships designed as tax shelters. Their investment proved worthless and, moreover, the Internal Revenue Service eventually disallowed any deductions beyond their actual monetary loss. Plaintiffs' principal allegation has been that defendant David Wasserstrom, an attorney, together with Frederick Gagnon and Bernard Boyers, orchestrated a scheme to sell securities in worthless coal rights as purported tax shelters while concealing that they themselves would take the lion's share of the proceeds. As further developed in discovery and at trial, plaintiffs contended that Wasserstrom had, prior to the organization of the limited partnerships, negotiated the purchase of Cannon Coal Company (Cannon) by the Seah Corporation, of which Wasserstrom was president and a director, for $400,000 in late 1975. Cannon's principal asset was its leasehold on 3,200 acres of West Virginia coal property. Wasserstrom, Gagnon and Boyers then allegedly conspired in establishing six virtually identical limited partnerships that would each sublease 400 acre parcels of this property from Cannon for an "advanced royalty" from each of $2,225,000, of which $475,000 was payable in cash and $1,750,000 in non-recourse notes. Thus, the bulk of the property purchased for $400,000 was resold within a few months for a total of $2,850,000 in cash and $10,500,000 in non-recourse notes.

Wasserstrom, Gagnon and Boyers were alleged to have recruited as nominal general partners for three such limited partnerships, Ark Associates (Ark), Bar and Cay, defendants Charles Lieberman, Edward Hershenhorn and David Weinstein who distributed offering memoranda for the partnerships without revealing that those partnerships were in fact controlled by and benefitted Wasserstrom, Gagnon and Boyers. Plaintiffs claim that the offering memoranda, allegedly composed by Wasserstrom, Gagnon and Boyers, were false and misleading as to the coal reserves and feasibility of coal recovery.

The offering memoranda included a tax opinion written by Wasserstrom and issued under the name of Wasserstrom's law firm, Pelino, Wasserstrom, Chucas & Monteverde (PWC & M), that allegedly misrepresented that the IRS would allow the deduction of large advanced royalty payments by non-recourse notes. The memoranda also contained a statement by the defendant accounting firm of Clarence Rainess & Co. (Rainess) that the assumptions underlying the partnerships' projections were "not unreasonable." Plaintiffs claimed that Wasserstrom and the accountants knew there was no reasonable basis for these assumptions.

Wasserstrom, Gagnon and Boyers allegedly concealed from investors their own interests and those of general partners Lieberman, Hershenhorn and Weinstein in the sale of the partnerships and also concealed that Wasserstrom's law firm received what are claimed to be excessive legal fees for the preparation of the partnerships.

The complaint alleges that plaintiffs and those similarly situated were fraudulently induced to invest more than $1,400,000 in Ark, Bar and Cay, which money was in fact divided by some defendants, resulting in a complete loss on the investments and the disallowance of deductions by the IRS. Plaintiffs claimed these facts demonstrated intentional misrepresentations and omissions in connection with the sale of securities in violation of Section 10(b) of the Securities and Exchange Act of 1934, 15

U.S.C. § 78j(b) (1982), and Rule 10b–5 promulgated thereunder, 17 C.F.R. § 240.-10b–5 (1985), and constituted a pattern of racketeering activity and a conspiracy to commit such activity in violation of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1962(c) and 1962(d) (1982). Finally, plaintiffs alleged counts under state common law, including one for defendants' negligent misrepresentations in recommending and soliciting investments in enterprises in which they had an interest.

In the period before trial, the district court denied defendants' motions to dismiss the first amended complaint, *see Eisenberg v. Gagnon*, 564 F.Supp. 1347 (E.D.Pa.1983), denied plaintiffs' motion for class certification, and gave plaintiffs leave to file a third amended complaint stating claims against Rainess and its alleged successor in interest, Seidman & Seidman (Seidman). At the trial, defendants were attorney Wasserstrom, his former law firm PWC & M, general partners Lieberman and Weinstein, and the Rainess and Seidman accounting firms. Defendants Gagnon and Boyers were not served and were therefore dismissed. A default judgment was entered against Edward Hershenhorn, general partner of Bar.

The jury was presented with a special verdict form asking it to decide the securities law, RICO, and negligence claims separately as to each plaintiff and defendant. The jury found for plaintiff Eisenberg and against defendants Wasserstrom and Weinstein on the state law negligence claim; for plaintiff Nissen and against defendant Wasserstrom on the same theory; but for defendants on all other claims. After a separate damages trial, the same jury awarded damages to Eisenberg of $12,200 against Wasserstrom and $6,100 against Weinstein, and to Nissen of $23,000 against Wasserstrom.

The parties, following the court's instruction, had filed post-trial motions prior to the damages trial which it ruled on thereafter. The district court granted Wasserstrom's and Weinstein's motion for judgment n.o.v. on liability, concluding that there was insufficient evidence upon which a jury could find reliance by plaintiffs on the offering materials.

■■■ Plaintiffs appeal from the district court's orders entering judgment for all defendants on jury verdicts under federal securities laws, entering judgment on the jury verdict for defendant PWC & M under Pennsylvania common law of negligent misrepresentation, and entering judgment n.o.v. for Wasserstrom and Weinstein on the common law claim of negligent misrepresentation. Appellants also seek reversal of the district court's orders denying class certification and denying their motion to compel production of certain documents. Wasserstrom, as a protective matter, cross-appeals from the court's denial of his motion for a new trial.[1]

## II.

### FEDERAL SECURITIES CLAIMS

We consider first the plaintiffs' claim that defendants violated § 10(b) of the Securities and Exchange Act of 1933, 15 U.S.C. § 78j (1982), and Rule 10b–5, 17 C.F.R. § 240.10b–5 (1985), promulgated thereunder, which prohibit misrepresentations and misleading omissions in connection with the sale of securities. The jury found for defendants on these claims. Appellants argue that the district court erro-

---

1. Defendant Seidman does not participate on appeal. Appellees Lieberman and Rainess contend that plaintiffs' appeal is untimely as to them because judgment was entered in their favor on liability on February 1 before the trial on damages and no appeal was taken within 30 days. *See* Fed.R.App.P. 4(a)(4). Absent certification under Fed.R.Civ.P. 54(b), plaintiffs could not have appealed a judgment final as to some but not all defendants. The appeal was taken from final judgment as to all parties. Seidman and Rainess also contend that appellants abandoned their claim against them because their notice of appeal does not refer to the February 1 judgment. We disagree. Appellants' Notice of Appeal clearly goes to the rulings and instructions concerning the liability of these two defendants, *see* Fed.R.App.P. 3(c), and hence the appeal is timely as to all appellees.

neously refused to instruct the jury that fraudulent projections were actionable and that the district court gave misleading instructions on the requisite state of mind.

### A. *Fraudulent Projections*

Plaintiffs requested that the district court instruct the jury that fraudulent financial projections used in the sale of securities are actionable under Section 10(b). The proposed instruction, derived from 3 E. Devitt & C. Blackmar, *Federal Jury Practice and Instructions* § 98.11 (3d ed. 1977), was as follows:

Projections and financial forecasts made with a reasonable basis are not made misleading merely because they may ultimately be proven incorrect.

A projection or a forecast may constitute a basis for plaintiffs' verdict if, but only if, it be proved by a preponderance of the evidence that at the time the forecast or projection was made, the defendants either

(1) did not believe that the forecast or projection was reliable, or

(2) had reason to believe that the forecast or projections were not reliable.

If you find defendants had reason to believe that the projection was not reliable, you should find that they issued a misleading statement.

Appellees agree that fraudulent projections are actionable under § 10(b) and Rule 10b–5. There is considerable authority that projections, forecasts and opinions are actionable as misleading in a variety of circumstances. *See First Virginia Bankshares v. Benson,* 559 F.2d 1307, 1314 (5th Cir.1977), *cert. denied,* 435 U.S. 952, 98 S.Ct. 1580, 55 L.Ed.2d 802 (1978); *Gottreich v. San Francisco Investment Corp.,* 552 F.2d 866, 867 (9th Cir.1977); *Marx v. Computer Sciences Corp.,* 507 F.2d 485, 489–90 (9th Cir.1974); *SEC v. Okin,* 137 F.2d 862, 864 (2d Cir.1943); R. Jennings & H. Marsh, *Securities Regulation* 880–85 (5th ed. 1982); Jacobs, *What is a Misleading Statement or Omission under Rule 10b–5?,* 42 Fordham L.Rev. 243, 279–87 (1973). *See also Sharp v. Coopers & Lyb-* *rand,* 649 F.2d 175, 184–85 (3d Cir.1981), *cert. denied,* 455 U.S. 938, 102 S.Ct. 1427, 71 L.Ed.2d 648 (1982). As presented to the jury, the offering memoranda contained allegedly fraudulent projections in the tax opinion letter supporting the view that the IRS would consider the investments as valid tax shelters, and in the projections of coal reserves and likely ability to mine them.

The district court refused to give any instruction pertaining to projections or forecasts, but instead emphasized that plaintiffs must establish that representations of "existing fact" are untrue. In relevant part, the court's instruction was that:

A "fraudulent misrepresentation" … means a representation that *an existing fact is true,* it being known to the person making said representation that *the facts represented to exist do not in fact exist* and that said representation is false. A fraudulent misrepresentation may be said to be the intentional misstatement of a person as to the *truth of an existing fact,* it being then known to the person making said statements that the facts represented to be true are false.

[P]laintiff must prove by preponderance of the evidence that the defendant stated material facts which he knew to be false, or knew of the existence of material facts which were not disclosed and should have realized their significance in the making of an investment decision. …

. . . .

Let me discuss what a material fact is …. [It] is one that a reasonable man would deem important in determining whether or not to purchase a limited partnership interest. An omitted fact is material if there is a substantial likelihood that a reasonable person would consider it important in deciding whether or not to purchase the limited partnership interest.

App. at 334–36.

■ There is a possibility that taking the charge as a whole the jurors would have

assumed that the term "existing facts" does not include projections or opinions. This would have been a serious error of law. An opinion or projection, like any other representation, will be untrue if it has no valid basis, *see Marx v. Computer Sciences Corp.*, 507 F.2d at 490, but "a reasoned and justified statement of opinion, one with a sound factual or historical basis, is not actionable." *Id.* (quoting *G & M, Inc. v. Newbern*, 488 F.2d 742, 745–46 (9th Cir.1973)). Since the district court's error in failing to instruct the jurors that projections and opinions come within the ambit of actionable misrepresentations may have affected the jurors' verdict as to all of the defendants, we must overturn the jury verdict in favor of defendants on the securities claim.[2]

Appellees Lieberman and Weinstein justify the district court's failure to instruct the jurors on projections and opinions on the ground that plaintiffs' proposed instruction incorrectly stated the requisite standard of culpability. They argue that the requested charge would have permitted the jury to hold the defendants liable if it found that defendants had *any* reason to believe the projections were not reliable, whereas under the proper standard plaintiffs must show that defendants did not have an "informed and reasonable belief" that they were reliable. While the formbook instruction proffered by plaintiffs may not have adequately conveyed all the subtleties involved when the alleged mnisrepresentation stems from a projection or opinion, it was not so seriously erroneous as to justify the district court's failure to give an instruction that predictions and opinions are actionable, which went to the heart of plaintiffs' federal claims.

■ In establishing *scienter* with respect to projections and opinions, it is insufficient to show mere negligent conduct, *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976), or that

a forecast turned out to be inaccurate. However, as this court has previously stated, an opinion must not be made "with reckless disregard for its truth or falsity," or with a lack of a "genuine belief that the information disclosed was accurate and complete in all material respects." *McLean v. Alexander*, 599 F.2d 1190, 1198 (3d Cir.1979) (quoting *Ultramares v. Touche*, 255 N.Y. 170, 174 N.E. 441 (1931) (Cardozo, J.)). Therefore, an opinion that has been issued without a genuine belief or reasonable basis is an "untrue" statement which, if made knowingly or recklessly, is culpable conduct actionable under § 10(b) and Rule 10b–5. *See Marx v. Computer Sciences Corp.*, 507 F.2d at 490; *Chris-Craft Industries v. Piper Aircraft Corp.*, 480 F.2d 341, 363–64 (2d Cir.), *cert. denied*, 414 U.S. 910, 94 S.Ct. 231, 38 L.Ed.2d 148 (1973); Jacobs, *What is a Misleading Statement or Omission under Rule 10b–5?*, 42 Fordham L.Rev. at 280–84. *See also Gottreich v. San Francisco Investment Corp.*, 552 F.2d at 867.

■ When a representation is made by professionals or "those with greater access to information or having a special relationship to investors making use of the information," there is an obligation to disclose data indicating that the opinion or forecast may be doubtful. *See Chris-Craft Industries v. Piper Aircraft Corp.*, 480 F.2d at 363–66; Jacobs, *What is a Misleading Statement or Omission under Rule 10b–5?*, 42 Fordham L.Rev. at 280–81, 283–84. When the opinion or forecast is based on underlying materials which on their face or under the circumstances suggest that they cannot be relied on without further inquiry, then the failure to investigate further may "support[ ] an inference that when [the defendant] expressed the opinion it had no genuine belief that it had the information on which it could predicate that opinion." *McLean v. Alexander*, 599 F.2d at ·1198.

**2.** Because both the negligent misrepresentation claim and the securities claim against Rainess are based on its endorsement of the allegedly fraudulent financial projections, the jury verdict for Rainess on the negligence claims may also have been tainted by the court's failure to instruct as to predictions and opinions. Therefore, we reject Rainess' contention that the unappealed jury verdict in its favor precludes a new trial against it on the securities count.

Rainess mounts a vigorous challenge to the sufficiency of the evidence presented against it, and contends that the instructions, even if erroneous, were harmless as to it since it should have been awarded a directed verdict on the securities claims. The particular assertion by Rainess on which plaintiffs sought to predicate liability was the statement in its opinion that "the assumptions [of management on which the projections of future operations were based] are not unreasonable." One crucial management assumption was that the coal tracts contained 1,250,000 tons each of recoverable coal reserves that could be mined at the rate of 72,000 tons a year. Plaintiffs presented testimony at trial that the offering memoranda overstated reserves by 50% and did not provide sufficient data to support any conclusion as to whether 72,000 tons of coal could be mined a year. Although Rainess claims to have relied on a coal reserve report by J.D. Brackenrich, an engineer with significant coal experience, and Lieberman and Weinstein also contend that this report gave all defendants a reasonable basis for the projections, a jury could find that there were sufficient indicia of unreliability in that report that Rainess, and possibly other defendants, should have inquired further and that the failure to do so was in reckless disregard of the duty to assure that there was a reasonable basis for the assumptions.

The report itself, which was addressed to Gagnon, stated that it was only an estimate based on visual inspection and that core-drilling and surface prospecting should be done. Nothing in the report suggested that it would or should be used for estimates in a securities prospectus. In fact, the engineer who prepared the report testified that the report had been altered to increase the stated coal reserves without his authorization after he prepared it. Harry Epstein, an accountant with defendant Rainess, admitted that he noted that the typeface changed in the middle of the engineer's report, but that he made no inquiry about that. In fact, there was no evidence that Rainess made any effort at independent investigation of the accuracy of the report, in contrast to the efforts at confirmation made by the accounting firm that was a defendant in *McLean v. Alexander*, 599 F.2d at 1199–1202. Thus, we reject Rainess' argument that it was entitled to a directed verdict.

As stated above, the district court will be directed to grant a new trial for plaintiffs as to all the appellees, including Rainess, assuming the issue remains live after a determination on class certification. *See* Part IV *infra*. At the new trial, the issue of whether the circumstances generated a similar duty to investigate on the part of each of the defendants will be for determination by the jury, guided by the court's instructions in light of the evidence presented.

B. *Recklessness*

Appellants also contend that the district court's instruction failed to make clear to the jurors that recklessness could establish liability. The parties agree that a showing of recklessness is sufficient to establish *scienter* for a claim under § 10(b). *See Sharp v. Coopers & Lybrand*, 649 F.2d at 193–94; *Healey v. Catalyst Recovery of Pennsylvania*, 616 F.2d 641, 649 (3d Cir. 1980); *McLean v. Alexander*, 599 F.2d 1190, 1197 (3d Cir.1979); *Coleco Industries v. Berman*, 567 F.2d 569, 574 (3d Cir.1977) (per curiam), *cert. denied*, 439 U.S. 830, 99 S.Ct. 106, 58 L.Ed.2d 124 (1978). The court's instruction on this issue was as follows:

A "fraudulent misrepresentation" ... means a representation that an existing fact is true, it being known to the person making said representation that the facts represented to exist do not in fact exist and that said representation is false. A fraudulent misrepresentation may be said to be the intentional misstatement of a person as to the truth of an existing fact, it being then known to the person making said statements that the facts represented to be true are false.

The plaintiff, in order to recover on the 10(b)5 claim, must show that the defend-

ant acted knowingly, that is, with a mental state embracing intent to deceive, manipulate, or defraud ... [P]laintiff must prove ... that the defendant stated material facts which he knew to be false, or knew of the existence of material facts which were not disclosed and should have realized their significance in the making of an investment decision. This element may also be established by a showing that the defendant acted with reckless disregard for the truth.

App. at 334–35 (emphasis added).

Since we have held that a new trial is required because of the failure to instruct on projections and opinions, we need not rule whether the above instruction was so inadequate as to be an independent basis for a new trial. However, we take this opportunity to point out the need for a fuller instruction that defendants are liable if they recklessly expressed opinions which they had good reason to believe were baseless.

### III.

### NEGLIGENCE CLAIMS

The district court had pendent jurisdiction over plaintiffs' claim that defendants had committed the tort of negligent misrepresentation in a business transaction.[3] In *Rempel v. Nationwide Life Ins. Co.*, 471 Pa. 404, 408, 370 A.2d 366, 367–68 (1977), the Pennsylvania Supreme Court accepted the elements of the tort as set forth in the first Restatement of Torts § 552 (1938). The second Restatement is not significantly different in this respect, *cf. Mill-Mar, Inc. v. Statham*, 278 Pa.Super. 296, 299, 420 A.2d 548, 550 (1980) (adopting second Restatement version), *appeal dismissed*, 499 Pa. 219, 452 A.2d 1017 (1982); *Muntan v. City of Monongahela*, 45 Pa. Cmmw. 23, 27, 406 A.2d 811, 813 n. 3 (1979) (relying on second Restatement version). It provides in relevant part:

(1) One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability *for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.*

(2) ... [T]he *liability* stated in Subsection (1) *is limited to loss suffered*

(a) by the person or one of a limited group of persons for whose benefit and guidance he intends to supply the information or knows that the recipient intends to supply it; and

(b) *through reliance upon it in a transaction* that he intends the information to influence or knows that the recipient so intends or in a substantially similar transaction.

Restatement (Second) of Torts § 552 (1977) (emphasis added); *compare* Restatement of Torts § 552 (1938).

### A. *Evidence of Reliance*

The district court granted judgment n.o.v. in favor of defendants Wasserstrom and Weinstein on the ground that there was insufficient evidence that plaintiffs had relied upon any misrepresentations. The court stated, "[P]laintiffs' own testimony revealed that not only did they not read the offering memorandum in its entirety, they did not rely upon its contents when they made their investments." App. at 537. Appellants concede that under the Restatement and Pennsylvania law reliance must be shown to establish the tort, but claim the jury was presented with sufficient evidence.

Our review of the record supporting the jury's verdict and the entry of judgment n.o.v. is plenary. In *Danny Kresky Enterprises v. Magid*, 716 F.2d 206, 209 (3d Cir.1983), we stated:

A judgment notwithstanding the verdict may be granted under Fed.R.Civ.P. 50(b) "only if, as a matter of law, 'the record is

---

3. Appellants raise no claim contesting the entry of the jury verdict for defendants Rainess, Seidman and Lieberman on the state law negligence count.

critically deficient of that minimum quantity of evidence from which a jury might reasonably afford relief.' " *Dudley v. South Jersey Metal, Inc.,* 555 F.2d 96, 101 (3d Cir.1977). In considering a motion for judgment n.o.v., the court "must expose the evidence to the strongest light favorable to the party against whom the motion is made and give him the advantage of every fair and reasonable inference." *Inventive Music Ltd. v. Cohen,* 617 F.2d 29, 31 (3d Cir.1980). On appeal, the appellate court should apply the same standard as the trial court in determining the propriety of a judgment n.o.v. *Harwood & Associates, Inc. v. Texas Bank & Trust,* 654 F.2d 1073, 1076 (5th Cir.1981).

"[W]e are not free to weigh the evidence, pass on the credibility of the witness, or substitute our judgment of the facts for that of the jury." *Blair v. Manhattan Life Insurance Co.,* 692 F.2d 296, 300 (3d Cir.1982).

■ Viewing the verdict and the evidence in the light most favorable to the verdict winner, we conclude that there was sufficient evidence to support a finding of reliance. Plaintiff Nissen testified that he spent an hour or two reading the offering memoranda for the Bar partnership and invested in reliance upon both its possible profitability and tax advantages. Plaintiff Eisenberg's testimony, presented in summarized form by the district court due to Eisenberg's condition of aphasia, was similar. He testified that he had read half of the offering memoranda and skimmed half. Although there was also evidence, including portions of plaintiffs' own testimony, that they had also relied on sources apart from the offering memoranda and that plaintiffs' reading of the documents was less than exacting, plaintiffs' testimony presented sufficient evidence to raise a jury question on the issue of reliance. Plaintiffs need not prove that they read the materials in their entirety, or that the recommendation of an agent or adviser did not play a part in their investment decisions. *See* Restatement (Second) of Torts § 552(2) & comments g & h. Thus, the district

court's grant of judgment n.o.v. on the grounds given was error.

## B. *Relevance of an Attorney-Client Relationship*

■ Wasserstrom argues that we may affirm the district court's entry of judgment n.o.v. on the ground that the jury's verdict against him was, in reality, one for legal malpractice which was not proven because he had no attorney-client relationship with plaintiffs. In Pennsylvania malpractice liability for negligent performance of legal services generally extends only to the lawyer's clients. *Smith v. Griffiths,* 327 Pa.Super. 418, 425–26, 476 A.2d 22, 26 (1984); *but cf. Guy v. Liederbach,* 501 Pa. 47, 59, 459 A.2d 744, 750 (1983) (rejecting beneficiary's tort claim against attorney who drafted a will but allowing claim that plaintiff was third party beneficiary to contract between lawyer and testator). However, plaintiffs' action in this case was not one for legal malpractice.

Plaintiffs' theory, presented in their amended complaint and in their opening and closing statements, was that Wasserstrom deceived them in a business transaction in which he had a pecuniary interest. Therefore, plaintiffs' verdict does not hinge on the breach of duty an attorney owes clients or others in privity, but rests on the more general principles applicable to a seller or other interested party who misrepresents the nature and value of goods, the tort known generally as negligent misrepresentation.

■ The Restatement adopted by Pennsylvania and the weight of authority at common law allow an action to be brought by any "person or one of a limited group of persons for whose benefit and guidance he [the maker of the misrepresentation] intends to supply the information or knows that the recipient intends to supply it." Restatement (Second) of Torts § 552(2)(a) (1977). *See also id.* comment h; W. Keeton, *Prosser & Keeton on the Law of Torts* § 107, at 745–48 (5th ed. 1984). There is no

strict privity requirement. The jury had before it sufficient evidence to conclude that Wasserstrom negligently misrepresented the facts underlying the limited partnerships in statements that were specifically intended for the benefit and guidance of a limited class of prospective investors, including plaintiffs. The jury was therefore entitled to conclude that the information was circulated for the specific purpose of inducing members of a particularized class to rely thereupon, a circumstance that would create a duty of due diligence in the maker of the statements and a reasonable expectation of accuracy in the recipients, even without a specific formal relationship between the investors and Wasserstrom. *See Mallis v. Bankers Trust Co.*, 615 F.2d 68, 82–83 (2d Cir.1980), *cert. denied*, 449 U.S. 1123, 101 S.Ct. 938, 67 L.Ed.2d 109 (1981). We will therefore reverse the district court's order granting judgment n.o.v. and direct the district court to reinstate the jury's verdict against Wasserstrom and Weinstein.

## C. *Wasserstrom's Cross-Appeal for a New Trial*

Wasserstrom's cross-appeal from the district court's denial of his motion for a new trial on plaintiffs' negligence claims challenges the introduction of certain testimony and the damage verdict.[4]

### 1. Introduction of Monteverde's Testimony

■ Wasserstrom contends that the district court abused its discretion and committed prejudicial error in allowing Tom Monteverde, Wasserstrom's partner and a principal of the defendant law firm PWC & M, to testify what he believed should have been included in one of the private offering memoranda and as to whether the memorandum complied with the applicable disclosure requirements.

Monteverde is a lawyer specializing in business litigation, who has also acted as general counsel for banks, trucking companies and brokerage houses. Although he had represented clients in securities cases, and testified that he was familiar with the disclosure requirements of federal and state securities laws, he did not view himself as expert in the preparation of offering memoranda.

Monteverde testified that he had looked at one of the offering memoranda when it was being prepared, partly to determine whether a change in applicable tax regulations had been adequately disclosed, and concluded that it had been. Monteverde was then asked whether, based on information learned in connection with the litigation, he believed that the firm and Wasserstrom as draftsman were negligent in not disclosing Wasserstrom's and Chucas' interest in Cannon Coal Company and its parent Seah, and the low purchase price of Cannon several months earlier. Defendants objected that this called for expert testimony. The court ruled the question proper as calling for Monteverde's "professional opinion." Monteverde answered that those facts "should have been set forth in the offering memoranda," App. at 268, and stated, "From my standpoint and a conventional security lawyer's standpoint, that should have been there." App. at 270–71. He further stated that his standards were somewhat higher than those of the average lawyer.

This testimony by Wasserstrom's former partner against his own interests that he had reviewed the disclosure materials and believed them to be adequate, but that he would not have found them adequate had he then had knowledge of additional facts known to his partners, was not offered as expert testimony under Fed.R.Evid. 703. However, it was not an abuse of discretion for the district court to have admitted it under the lay opinion rule of Fed.R.Evid. 701 which has greatly expanded the realm of opinion testimony by allowing non-experts to give opinions or inferences that are "(a) rationally based on the perception of the witness and (b) helpful to a clear understanding of his testimony or the determina-

---

**4.** Our preceding discussion disposes of Wasserstrom's challenge to the jury instructions as erroneously stating the elements of legal malpractice, since that was not plaintiffs' claim.

tion of a fact in issue." Such testimony is admissible even if it "embraces an ultimate issue to be decided by the trier of fact." Fed.R.Evid. 704. We have recognized that the "modern trend favors the admission of opinion testimony, provided that it is well founded on personal knowledge and susceptible to specific cross-examination." *Teen-Ed, Inc. v. Kimball International, Inc.*, 620 F.2d 399, 403 (3d Cir.1980).

A number of recent decisions have recognized that some lay witnesses are qualified to give a conclusion based on personal experience with documentary or physical materials. *See, e.g., Soden v. Freightliner Corp.*, 714 F.2d 498, 510–12 (5th Cir.1983) (service manager in charge of maintenance of trucks allowed to give opinion as to defect and its dangerousness); *Joy Manufacturing Co. v. Sola Basic Industries*, 697 F.2d 104, 110–12 (3d Cir.1982) (worker allowed to testify as to proportion of downtime due to hearth problems); *United States v. Grote*, 632 F.2d 387, 390 (5th Cir.1980), *cert. denied*, 454 U.S. 819, 102 S.Ct. 98, 70 L.Ed.2d 88 (1981) (IRS agent could give opinion as to whether tax returns filed were acceptable or not); *Teen-Ed v. Kimball International*, 620 F.2d at 403–04 (accountant familiar with books could give lay opinion as to how lost profits should be calculated). *See also United States v. Ranney*, 719 F.2d 1183, 1189 n. 11 (1st Cir.1983) (investors in heating oil futures could give lay opinion based on their personal knowledge about the value of the investment opportunity offered by defendants).

Since Monteverde personally observed the preparation of the offering memoranda and scrutinized them for adequacy of disclosure, and possessed the qualifications to draw legal conclusions from them, his testimony as to how he would have viewed the undisclosed facts was not an impermissible answer to a hypothetical question by a non-expert, but remained a lay inference

from his prior personal experience and observation.

Monteverde was also asked and testified, without objection, that the offering memoranda were "not in compliance with what [he] regarded as the disclosure obligations that existed in 1976." App. at 271. In light of defendants' failure to object to this specific question as impermissible, we need not decide whether this, as distinguished from Monteverde's other testimony, exceeded the bounds of permissible inquiry of a lay witness.[5]

### 2. Damages

Wasserstrom also contends that the jury's award cannot be sustained because it conflicts with the instructions given. Our standard of review is whether the district court abused its discretion in denying Wasserstrom's motion for a new trial.

The narrative facts on damages were undisputed. Eisenberg and Nissen invested, respectively, $12,500 and $15,000 in cash, and signed non-recourse notes in addition, all of which ultimately provided no return. On their tax returns for the year 1976 they claimed, as a result, deductions of, respectively, $43,396 and $52,077. These deductions translated into net tax savings of, respectively, $17,605 and $22,677. The IRS denied plaintiffs' deductions based on the non-recourse notes. Under a 1982 settlement with the IRS, plaintiffs were to pay back taxes and interest for the disallowed deductions, but were allowed to deduct as an ordinary investment loss the cash sums invested in the coal mining partnerships. Eisenberg paid the IRS $13,908 in back taxes and $7,339 in interest, or $21,247 total. Nissen paid the IRS $16,396 in back taxes and $8,446 in interest, or $24,044 total. Both plaintiffs deducted these interest payments from their 1982 taxes, and both were, at all relevant times, in the 50 percent tax bracket.

Plaintiffs did not seek recovery of the back taxes they paid the IRS, but sought

5. Moreover, although Monteverde's testimony was not technically an admission, many of the policies that allow the evidence of a party's admission would also apply here. Because we

believe that Fed.R.Evid. 701 is broad enough to encompass Monteverde's testimony, we do not explore this other potential basis to support the district court's ruling.

only the value of their investments and the interest they had to pay the IRS in 1982 as a result of the disallowance of their claimed deductions. Defendants apparently conceded that these were recoverable losses but argued to the jury that plaintiffs had received tax benefits that completely offset these losses in that plaintiffs had the use of tax savings between 1977 (when they claimed the tax shelter write-off) and 1982 (when the IRS allowed the deduction and they reached a settlement), and deducted the actual losses and back interest paid to the IRS.

The charge, apparently favorable to defendants, was general and simple. The court instructed the jury to award the "actual loss" suffered as a result of defendants' negligence, "tak[ing] into account any tax benefits the plaintiffs received from their investment, but that is for you, ladies and gentlemen, to so determine." Tr. Feb. 24, 1984 at 83. The court further explained that the jury was to compensate plaintiffs for "actual pecuniary loss", including (1) the difference between the amount paid and the real value of what they received and (2) "all other pecuniary loss suffered as a consequence of the negligence, including the additional expenses and losses incurred as a result of the negligence, but not including the profit the plaintiff ... has made." Id. at 84.

The jury awarded Eisenberg $18,300 and Nissen $23,000 in a general verdict. The parties agree on the interpretation of this verdict that the jury awarded approximately the total sum invested plus the interest plaintiffs paid to the IRS, without substantial deductions for tax benefits. Wasserstrom frames the issue before us narrowly. He apparently concedes that the jury could have concluded that there was no cognizable tax benefit to plaintiffs from the use of the tax savings between 1977 and 1982.

He argues only that the jury must have disregarded the court's instructions in failing to reduce the award by 50 percent because the ultimate loss on the investment and the interest paid were deductible.

There are two obstacles to Wasserstrom's contention. First, defendants clearly were willing to present the tax benefit issue as a jury question and allow the jury to decide whether, on the facts, there was any tax benefit. Second, the jury's determination was consistent with Pennsylvania law regarding the tax consequences of injuries from negligence.

The Pennsylvania Supreme Court has broadly held that, "[i]ncome tax as it relates to damages should be mentioned neither in argument nor in jury instructions." Gradel v. Inouye, 491 Pa. 534, 547, 421 A.2d 674, 680 (1980). See also Girard Trust Corn Exchange Bank v. Philadelphia Transportation Co., 410 Pa. 530, 538, 190 A.2d 293, 298 (1963). This holding has been applied both to bar references to the nontaxability of a personal injury damage award, see, e.g., Logan v. Stelmach, 325 Pa.Super. 181, 184–85, 472 A.2d 708, 709–10 (1984), and to bar consideration of the taxes on lost income that an accident victim would have paid, Richardson v. LaBuz, 81 Pa.Cmmw. 436, 474 A.2d 1181, 1196–97 (1984). It follows that Pennsylvania would not permit a jury to consider the taxability of the award to plaintiffs nor the deductibility of the loss prior to the award in assessing damages,[6] and that the district court did not err in denying Wasserstrom's motion for a new trial.

### D. Respondeat Superior Liability of PWC & M

██ Plaintiffs moved for a directed verdict and then judgment n.o.v. against the defendant law firm of PWC & M on the ground that the jury had before it no evi-

---

**6.** This appeal does not present the more difficult issue of whether a tax benefit in excess of the actual investment loss, such as is commonly anticipated in tax shelter investments, would be taken into consideration in Pennsylvania as part of the measure of actual loss. We note that courts appear divided on this issue when it has

arisen under federal securities law. Compare William Z. Salcer v. Envicon Equities Corp., 744 F.2d 935 (2d Cir.1984) and Austin v. Loftsgaarden, 675 F.2d 168, 180–84 (8th Cir.1982) with Burgess v. Premier Corp., 727 F.2d 826, 837–38 (9th Cir.1984).

dence on which the firm could escape respondeat superior liability for the acts of attorney Wasserstrom. The jury instruction was as follows:

The law ... holds a corporation responsible for all unlawful acts of its directors, or officers, or employees, or other agents, provided such unlawful acts are done within the scope of their authority, as would usually be the case if done in the ordinary course of their employment, or in the ordinary course of the corporation's business.

Authority to act for a corporation in a particular matter, or in a particular way or manner, may be inferred from the surrounding facts and circumstances shown by the evidence in the case....

Every act of every director, or officer, or employee, or other agent, on behalf of, or in the name of a corporation, if done within the scope of his authority, is in law the act of the corporation itself.

App. at 344–45. It is irrelevant for our purposes that plaintiffs failed to object to this instruction, since plaintiffs seek judgment n.o.v. on the basis of the evidence presented.

It was undisputed at trial that Wasserstrom was an employee-shareholder of the professional corporation and acted as would a partner in law firms organized as partnerships; that PWC & M received a $25,000 fee for Wasserstrom's services in preparing each of the offering memoranda; that the tax opinion Wasserstrom drafted was issued in the name of the firm PWC & M and had, in fact, been reviewed by Monteverde, one of the principals of the law firm; and that Wasserstrom was acting in his capacity as an employee of PWC & M in preparing the offering materials. Moreover, there was unrebutted testimony by Monteverde that the offering materials would have been more carefully scrutinized by other lawyers of the firm had the press of business not interfered. We believe that this evidence requires a finding that, as a

matter of law, Wasserstrom's preparation of the offering materials and related activities were within the scope of his employment and that the firm should be held vicariously liable.

Even if the jury focused on Wasserstrom's personal interest in the transactions, Pennsylvania law is clear that the mere existence of a personal motivation is insufficient to shield a principal from liability where the conduct was also to the benefit of and within the scope of employment generally. *See Yaindl v. Ingersoll-Rand Co.,* 281 Pa.Super. 560, 575–76, 422 A.2d 611, 619 (1981); Restatement (Second) of Agency § 236 (1958). On these facts, we believe that no reasonable jury could conclude that Wasserstrom was acting outside the scope of his employment and authority when he prepared the offering materials for the limited partnerships.[7]

There are two potentially applicable lines of Pennsylvania cases, one holding that negligent and even fraudulent misrepresentations by an employee may give rise to respondeat superior liability of the employer, *see Rempel v. Nationwide Life Insurance Co.,* 471 Pa. 404, 370 A.2d 366 (1977); *First National Bank of Altoona v. Turchetta,* 407 Pa. 511, 181 A.2d 285, 287–88 (1962); *Muntan v. City of Monongahela,* 45 Pa.Cmmw. 23, 27–28, 406 A.2d 811, 813–14 (1979); *see also Sharp v. Coopers & Lybrand,* 649 F.2d 175, 184 (3d Cir.) (dictum), *cert. denied,* 455 U.S. 938, 102 S.Ct. 1427, 71 L.Ed.2d 648 (1981); *Bowman v. Home Life Insurance Co. of America,* 243 F.2d 331, 335 (3d Cir.1957) (construing Pennsylvania law), and the other holding that a principal may not be liable for an action in fraud and deceit for an agent's false representations absent proof of authorization or participation by the principal. *See Eckrich v. DiNardo,* 283 Pa.Super. 84, 90, 423 A.2d 727, 729–30 (1980); *Shane v. Hoffmann,* 227 Pa.Super. 176, 183–84, 324 A.2d 532, 537 (1974). *See also Littler v.*

---

**7.** The extent of respondeat superior liability under the federal securities laws, *see e.g., Sharp v. Coopers & Lybrand,* 649 F.2d 175, 180–85 (3d Cir.1981); *Rochez Brothers, Inc. v. Rhoades,* 527

F.2d 880, 884–86 (3d Cir.1975), *cert. denied,* 425 U.S. 993, 96 S.Ct. 2205, 48 L.Ed.2d 817 (1976) is not before us.

*Dunbar,* 166 Pa.Super. 271, 273–74, 70 A.2d 365, 366, *rev'd on other grounds,* 365 Pa. 277, 74 A.2d 650 (1950) (approving reasoning on this point); *Aiello v. Ed Saxe Real Estate, Inc.,* 327 Pa.Super. 429, 476 A.2d 27, 30–32 (1984). We need not attempt a complete reconciliation of Pennsylvania authority. It is sufficient for our purposes to note that underlying many of the cases in this field are two distinctions: one, between an employee and an agent not subject to control by the employer, and another between intentional and unintentional torts of the agent. *See generally* W. Keeton, *Prosser and Keeton on the Law of Torts* § 70, at 505–06, 508 (5th ed. 1984). Although the above cases may be read to hold that an uncontrolled *agent* who *fraudulently* misrepresents facts does not cause vicarious liability to the principal, we predict that the Pennsylvania Supreme Court would not exonerate from vicarious liability a firm whose *employee* was simply *negligent* in preparing materials and whose work was in fact subject to the review and control of the firm.

This reading is consistent with the language of the Pennsylvania statute governing liability of professional corporations, which states:

> The professional corporation shall be liable up to the full value of its property for any negligent or wrongful acts or misconduct committed by any of its officers, shareholders, employees or agents while they are engaged on behalf of the corporation in rendering professional services.

15 Pa.Stat.Ann. § 2913(b) (Purdon Supp. 1984–85).

We conclude that PWC & M was vicariously liable for the acts of shareholder-employee and "de-facto partner" Wasserstrom in negligently preparing offering materials during the scope of his employment with the firm and for the firm's benefit, and that the jury's verdict in favor of the firm must be overturned as unsupported by the evidence. We will direct the district court to enter judgment against PWC & M on this count.

## IV.

### DENIAL OF CLASS CERTIFICATION

■ Appellants contend that the district court abused its discretion in denying certification of a class action in this case. At the outset, we reject Wasserstrom's contention that the issue is moot because the jury rejected plaintiffs' securities claims. In the first place, we are sending that claim back for a new determination by the jury. In the second place, the jury did find some of the defendants culpable on the tort claim, as to which class certification was also sought. Finally, in *United States Parole Commission v. Geraghty,* 445 U.S. 388, 100 S.Ct. 1202, 63 L.Ed.2d 479 (1980), the Court held that even the expiration of a named plaintiff's substantive claim does not render moot the action brought on behalf of the class. We have applied *Geraghty* in concluding that the defeat of the named plaintiff's individual claim on the merits, after denial of class certification, does not moot the class action issues. *See Mazus v. Department of Transportation,* 629 F.2d 870, 875–76 (3d Cir.1980), *cert. denied,* 449 U.S. 1126, 101 S.Ct. 945, 67 L.Ed.2d 113 (1981); *Alexander v. Gino's, Inc.,* 621 F.2d 71, 73–74 (3d Cir.) (per curiam), *cert. denied,* 449 U.S. 953, 101 S.Ct. 358, 66 L.Ed.2d 217 (1980).

Similarly, we can perceive no bar to the present appeal because the named plaintiffs have won relief on the merits. Indeed, in holding that denial of class certification was not an appealable collateral order, the Court made clear that the individual plaintiff retained "the prospect of prevailing on the merits and reversing an order denying class certification". *Coopers & Lybrand v. Livesay,* 437 U.S. 463, 469, 470 n. 15, 98 S.Ct. 2454, 2458, 2459 n. 15, 57 L.Ed.2d 351 (1978). In *Geraghty,* it reaffirmed "that the proposed class representative who proceeds to a judgment on the merits may appeal *denial* of class certification." 445 U.S. at 399, 100 S.Ct. at 1210 (emphasis in original). *See also Deposit Guaranty National Bank v. Roper,* 445 U.S. 326, 100 S.Ct. 1166, 63 L.Ed.2d 427 (1980). At a minimum, the named plain-

tiffs would have an interest in pursuing the class action "in their desire to shift part of the costs of litigation to those who will share in its benefits if the class is certified and ultimately prevails." *Id.* at 336, 100 S.Ct. at 1173. We turn, therefore, to decide whether the district court abused its discretion in denying class certification.

■ Plaintiffs sought certification as class representatives of "all persons who purchased limited partnership securities in Ark, Bar or Cay, with the exception of the defendants herein and any entity controlled by any of the defendants herein." Their complaint alleged that this group totalled at least 93 persons; that plaintiffs were class members with claims typical of those of the class and without conflicting interests; that the case presented predominating common issues of law and fact as to defendants' offering of the partnerships; and that a class action would be a superior method to adjudicate the controversy.

Defendants opposed maintenance of the class action on a variety of grounds, including that Eisenberg and Nissen were inadequate class representatives and that the claims asserted presented individual, rather than common, issues. The district court denied certification with a terse order that stated only, "The plaintiffs seeking to represent the proposed class have failed to satisfy the court that their claims are typical of the claims of the proposed class." Fed.R.Civ.P. 23(a)(3) provides that a class action may be maintained only if "the claims or defenses of the representative parties are typical of the claims or defenses of the class." The court thereafter denied plaintiffs' motion for renewed consideration of class certification, reaffirming the prior order without explanation.

■ The district court should have further amplified its reasoning. Although the Federal Rules do not mandate findings of fact and conclusions of law for rulings on motions to certify a class, we have stated that,

> [W]here, as here, the district court is presented with conflicting positions of substance as to how it should exercise its

discretion in determining whether to permit a class action, it is a salutary practice to give the litigants, either orally or in writing, at least a minimum articulation of the reasons for its decision. This is particularly true because of the practical importance of such a determination and the limited possibility of obtaining a seasonable review of the determination.

*Interpace Corp. v. City of Philadelphia,* 438 F.2d 401, 404 (3d Cir.1971). Articulation by the district court of the factors considered and the weight accorded to them in making a discretionary ruling is more likely to convince the reviewing court that the ruling was consistent with the sound exercise of discretion, *see United States v. Criden,* 648 F.2d 814, 819 (3d Cir.1981), a conclusion we cannot reach under the circumstances here.

■ Class actions are a particularly appropriate and desirable means to resolve claims based on the securities laws, "since the effectiveness of the securities laws may depend in large measure on the application of the class action device." *Kahan v. Rosenstiel,* 424 F.2d 161, 169 (3d Cir.), *cert. denied,* 398 U.S. 950, 90 S.Ct. 1870, 26 L.Ed.2d 290 (1970). We stated further, "[T]he interests of justice require that in a doubtful case ... any error, if there is to be one, should be committed in favor of allowing a class action." *Id.* (quoting *Esplin v. Hirschi,* 402 F.2d 94, 101 (10th Cir. 1968), *cert. denied,* 394 U.S. 928, 89 S.Ct. 1194, 22 L.Ed.2d 459 (1969)). As the Second Circuit has noted, "a class action [in a federal securities action] may well be the appropriate means for expeditious litigation of the issues, because a large number of individuals may have been injured, although no one person may have been damaged to a degree which would have induced him to institute litigation solely on his own behalf." *Green v. Wolf Corp.,* 406 F.2d 291, 296 (2d Cir.1968), *cert. denied,* 395 U.S. 977, 89 S.Ct. 2131, 23 L.Ed.2d 766 (1969).

The complaint here adequately alleged the existence of a class of investors similarly situated to Eisenberg and Nissen. The

allegation of more than 90 geographically dispersed plaintiffs met the numerosity requirement of Fed.R.Civ.P. 23(a)(1). Plaintiffs presented a sufficient number of common questions of law and fact to meet the requirements of Rule 23(a)(2), in particular the defendants' liability for the alleged omissions and misrepresentations common to the offering and sale of all three limited partnerships. Although the three partnerships had different general partners, it would be possible, if necessary, to determine at the damages stage which general partner is liable to which investors.

The presence of individual questions as to the reliance of each investor does not mean that the common questions of law and fact do not predominate over questions affecting individual members as required by Rule 23(b)(3) or that the representative's claims are not typical. In rejecting such a contention, the Second Circuit stated, "Carried to its logical end [this argument] would negate any attempted class action under Rule 10b–5, since as the District Courts have recognized, reliance is an issue lurking in every 10b–5 action." *Green v. Wolf Corp.*, 406 F.2d at 301. Rather than eliminate securities class actions, it would be more efficient to order separate trials, if necessary, limited to the issue of reliance. A well-reasoned opinion by then Chief Judge Lord of the Eastern District of Pennsylvania reaches the same conclusion. *Sharp v. Coopers & Lybrand*, 70 F.R.D. 544, 547–48 (E.D.Pa.1976). *Accord Entin v. Barg*, 60 F.R.D. 108, 112–13 (E.D.Pa. 1973); *In Re Penn Central Securities Litigation*, 347 F.Supp. 1327, 1344–45 (E.D. Pa.1972), *aff'd*, 494 F.2d 528 (3d Cir.1974). *See generally 1 Newberg on Class Actions* § 1115c (1977); 3B *Moore's Federal Practice* ¶ 23.46 at 406–411 (1985), and cases cited therein.

The typicality requirement of Rule 23(a)(3), on which the district court specifically relied to deny class treatment, is something of an enigma in the jurisprudence of class actions. To a large extent, it overlaps the requirements that the named representatives adequately represent the class, that there be common questions of law and fact, that such questions predominate, and that the class action be a superior means of resolution. *See* H. Newberg, 1 *Newberg on Class Actions,* § 1115a (1977); 3B *Moore's Federal Practice* ¶ 23.06–2 (1985). Nevertheless, Rule 23(a)(3) requiring typicality permits the court to assess whether the class representatives themselves present those common issues of law and fact that justify class treatment, thereby tending to assure that the absent class members will be adequately represented. *See id.* at 191–92. "Typical" is not identical, however, *id.* at 197 (1984–85 Supp.), and even atypical elements of a claim may often be adequately treated by judicious severance or use of subclasses or other separate treatment of individual issues. *See Green v. Wolf Corp.*, 406 F.2d at 299; *Sharp v. Coopers & Lybrand*, 70 F.R.D. at 548–49. As we recently suggested, typicality entails an inquiry whether "the named plaintiff's individual circumstances are markedly different or . . . the legal theory upon which the claims are based differs from that upon which the claims of other class members will perforce be based." *Weiss v. York Hospital*, 745 F.2d 786, 809 n. 36 (3d Cir.1984), *cert. denied*, —— U.S. ——, 105 S.Ct. 1777, 84 L.Ed.2d 836 (1985).

Eisenberg and Nissen were not untypical because they invested in two different limited partnerships or because members of the class may have invested in either of these two, or in a third. Plaintiffs' case was that these were identical investments, prepared by the same defendants, and containing the same alleged omissions and misrepresentations.

Assuming that the district court's order may have turned on the existence of individual issues as to reliance, we believe it was an abuse of discretion not to certify the class on that ground. This case did not present extraordinarily complex questions of causation and reliance, despite the possibility that only some members of the class may have relied on the offering materials prepared by defendants in choosing to invest. Nor was this case one founded on a variety of oral representations, a circum-

stance which might present a greater obstacle to class treatment, since the core of this case is the claim that the named plaintiffs, and presumably the class members, relied on virtually identical written materials. *See Sharp v. Coopers & Lybrand,* 70 F.R.D. at 548; *see also Kennedy v. Tallant,* 710 F.2d 711, 717–18 (11th Cir.1983). Thus it is not, as Wasserstrom suggests, analogous to a "mass tort" case, in which individual causation issues might prove a more significant obstacle. We conclude, therefore, that it was an abuse of discretion to deny class certification on the ground that Eisenberg's and Nissen's claims were atypical.

Eisenberg and Nissen ask us to direct the district court to certify the class. There are several reasons why such an order would be inappropriate. First, we find it difficult to evaluate, on the cold record, several of the remaining prerequisites to a 23(b)(3) class action, which the district court did not address. For example, defendants Weinstein and Lieberman assert that Eisenberg would be an inadequate representative under Rule 23(a)(4), given his aphasia, which prevented him from being deposed or from testifying before the jury at trial. This issue is best addressed in the first instance by the district court.

Second, class actions depend on the continuing supervision of the district court, including reconsideration of the efficacy of class action treatment as the circumstances change. One circumstance that has clearly changed is that Eisenberg and Nissen have now won a judgment on the merits. The Supreme Court was careful to point out in *Geraghty* that, although the class action issue was not moot, the adequacy of the representative would still have to be determined because it is not automatically established "that the named plaintiff is entitled to continue litigating the interests of the class." 455 U.S. at 405, 100 S.Ct. at 1214.

Therefore, we will leave the issue of class certification to the district court on remand subject, however, to our decision that the record as established demonstrates

that common questions of law and fact predominate and that, as of the order denying certification, the named representatives' claims were typical of those of the class.

If, on remand, the district court denies certification, that court will have to address whether the named plaintiffs' claims on the federal securities issue are moot since they may not be seeking any further relief beyond the negligence judgments we have reinstated.

## V.

### REMAINING ISSUES

We have considered each of the remaining issues raised by the parties, and have rejected all contentions not specifically discussed herein. Since the securities claim may be retried, we believe it may be useful to rule on appellants' contention that the district court should have compelled production of correspondence between Monteverde, a principal of defendant firm PWC & M, and counsel for the firm's insurer, Michael Gallagher.

■ PWC & M's insurer had arranged for PWC & M to be represented by Daniel Ryan, for Wasserstrom to be represented by Edward Mengel, and for its own interests as well as the coordination of the defense effort to be represented by Michael Gallagher, all of different law firms. Although the interests of these parties largely coincided, there was some correspondence between Monteverde and Gallagher regarding Monteverde's position that information known to Wasserstrom should have been disclosed to investors and the trial strategy that PWC & M should adopt in connection therewith.

■ We agree with the district court's ruling that the correspondence was privileged, since it is best viewed as part of an ongoing and joint effort to set up a common defense strategy between a defendant and an attorney who was responsible for coordinating a common defense position. Communications to an attorney to establish

a common defense strategy are privileged even though the attorney represents another client with some adverse interests. *See United States v. McPartlin*, 595 F.2d 1321, 1336–37 (7th Cir.), *cert. denied*, 444 U.S. 833, 100 S.Ct. 65, 62 L.Ed.2d 43 (1979); *Hunydee v. United States*, 355 F.2d 183, 184–85 (9th Cir.1965); *Continental Oil Co. v. United States*, 330 F.2d 347, 349–50 (9th Cir.1964); 2 J. Weinstein & M. Berger, *Weinstein's Evidence* ¶ 503(b)[06] (1982). *See also id.* ¶ 503(b)[07] at 503–65.

This situation is not governed by those cases holding there is no privilege for communications with another's attorney where the parties interests are completely adverse and it is clear that the statements were not made in the expectation that the relationship was confidential. *See Government of the Virgin Islands v. Joseph*, 685 F.2d 857, 862 (3d Cir.1982); *United States v. Cariello*, 536 F.Supp. 698, 702 (D.N.J.1982). Nor do we believe that the privilege was waived when Monteverde's discussion of the correspondence at sidebar, made in the expectation that it was *in camera*, came into the hands of plaintiffs' counsel despite the request of defense counsel that the sidebar conference be sealed. "No matter what standard of waiver [of privilege] is applied, the waiver must be knowing." *In the Matter of Grand Jury Empanelled October 18, 1979 (Appeal of Malfitano)*, 633 F.2d 276, 280 (3d Cir.1980). The district court neither erred nor abused its discretion in denying plaintiffs' motion to compel discovery of this correspondence.

## VI.

### CONCLUSION

For the reasons set forth above we will vacate the judgments in favor of all appellees on the securities count because the instructions were erroneous on fraudulent projections; we will reverse the order directing judgment n.o.v. for Wasserstrom and Weinstein on the common-law negligence count and direct the court to reinstate the jury verdict; we will reverse the order denying plaintiffs' motion for judgment n.o.v. against the law firm PWC & M on respondeat superior grounds and will direct the court to enter judgment for plaintiffs against PWC & M on that count; we will affirm the court's denial of Wasserstrom's motion, presented here on cross-appeal, for a new trial on both the merits and on damages; and we will vacate the court's order denying class certification and remand for further proceedings.

Costs are to be assessed against appellees who are to attempt to divide them amicably among themselves.