TEEN–ED, INC., trading as New Jersey Piano and Organ Co., Appellant in No. 79–1324,

v.

KIMBALL INTERNATIONAL, INC., and Edward Cohen, Individually and trading as The Piano Factory.

TEEN–ED, INC., trading as New Jersey Piano and Organ Co.

v.

KIMBALL INTERNATIONAL, INC., and Edward Cohen, Individually and trading as The Piano Factory, Cross-Appellant in No. 79–1325.

Nos. 79–1324, 79–1325.

United States Court of Appeals, Third Circuit.

Argued March 20, 1980.

Decided April 23, 1980.

Edwin B. Barnett (argued), Barry A. Brown, Strong, Barnett, Hayes & Hamilton, Philadelphia, Pa., Dante J. Sarubbi, Camden, N. J., for appellant Teen-Ed, Inc.

Alfred H. Wilcox (argued), Janet G. Perry, Joel Smith, Pepper, Hamilton & Scheetz, Philadelphia, Pa., George F. Kugler, John B. Kearney, Jeff Masin, Archer, Greiner & Read, Haddonfield, N. J., for cross-appellant Kimball International, Inc.

Before ALDISERT and GIBBONS, Circuit Judges, and POLLAK, District Judge.*

## OPINION OF THE COURT

ALDISERT, Circuit Judge.

A retailer appeals, in this diversity case, from an award of one dollar after a trial for breach of contract against a former supplier. Although the jury found the supplier liable for breach of contract, the retailer was precluded from offering basic damages testimony, with the result that a verdict for nominal damages was directed for the retailer. The failure of proof resulted from the trial court's rulings that expert testimony was required on the calculation of lost profits and that appellant's proposed expert testimony was inadmissible because appellant had failed to comply with a pre-trial order requiring identification of expert witnesses prior to trial. Appellant argues persuasively that his witnesses were being called as laymen and not as experts, but, unfortunately, it did not rely on this argument before the trial court. Thus, the very difficult question before us is whether an appellate court should reverse a trial court for reasons not presented to it.

Under normal circumstances we simply will not do this. In fealty to the adversary system, counsel are expected not only to advance and defend their clients' positions effectively but also to alert the trial court to sophisticated nuances of law that govern the case. Counsel, and not the court, direct the factual presentation of the trial. This is the common law tradition, a tradition that differs from procedures in civil law countries, where the judge, and not the lawyers, controls the presentation of evidence.

In this case, however, we make an exception to our usual rule, for not only did appellant's counsel fail to furnish the trial court with the proper legal argument, but

* Honorable Louis H. Pollak, of the United States District Court for the Eastern District of Pennsylvania, sitting by designation.

appellee's counsel also failed to assist the court in the proper resolution of a very difficult evidentiary problem. Thus, although the decision to admit or exclude opinion testimony is generally within the trial judge's discretion, in this case the district court was not asked to rule on the admissibility of the testimony in question under the proper legal precept. Under ordinary circumstances, perhaps, even this concert of activity would not be sufficient to vacate a judgment on an evidentiary ruling. But when, as here, a jury has decided liability in plaintiff's favor and the ruling has the effect of precluding its entire case on damages, we believe that fundamental dictates of fairness and justice require us to vacate the judgment and remand the proceedings for a new trial on damages.

■ This appeal arises from a simple breach of contract proceeding brought by Teen-Ed, a corporation retailing pianos and organs in Cherry Hill, New Jersey, against Kimball International, an Indiana-based manufacturer of pianos and organs.[1] Teen-Ed was an authorized dealer of Kimball pianos and organs since 1971, and prior to the termination of their relationship, Kimball products accounted for approximately one-third of Teen-Ed's sales. In the spring of 1976, following the advent of a new Kimball sales representative in Teen-Ed's area, some difficulties arose between the retailer and its supplier. The problems reached the critical stage in April 1976, when Kimball removed Teed-Ed from its active list of authorized dealers. Teen-Ed was left with only its unsold inventory of Kimball products and did not receive further shipments. This lawsuit followed. At the December 1978 trial, the jury found Kimball liable to Teen-Ed for breach of contract.[2] The trial court, however, directed a verdict of nominal damages of one dollar.

Appellant had sought to prove damages by showing loss of profits. This it proposed to do by offering the testimony of one Samuel Zeitz, a licensed public accountant who has served as appellant's accountant since 1978 and who had prepared Teen-Ed's tax returns for 1977. Lost profits were to be established by testimony to the following calculations. The first step was to compare the retailer's gross sales of Kimball products during 1975, the last full calendar year prior to termination, with the similar, but reduced, figures reflecting the diminishing gross volume of sales of the remaining Kimball inventory in 1976, 1977, and 1978. The comparison was to be made by subtracting the figures for each of the latter three years from the 1975 figure. Each difference was then to be multiplied by the 1975 gross profit margin, and finally, these products were to be reduced by the percentage of allocable variable costs to arrive at the net profits lost each year.

■ The district court determined that these calculations involved expressions of opinions from the accountant witness. We agree, but we note that the district court assumed that the opinions of an accountant would necessarily constitute expert opinion testimony. Appellant did not argue that the testimony was not expert opinion, but

---

1. The original complaint also included a count against Kimball for violation of the antitrust laws, but this claim was dismissed by summary judgment on September 29, 1978, and no appeal has been taken from its disposition.

2. Kimball has filed a cross-appeal at No. 79–1325 alleging trial error in the liability phase of the trial. Specifically, Kimball has objected to the court's denial of two of its proposed jury instructions, claiming, first that the court should have instructed the jury that a claim of breach of the duty to give reasonable notice ought to require an objection to the inadequate notice given, and, second, that the court should have instructed that a claim of breach of the duty of good faith ought to require evidence of conduct supporting an inference of bad faith. The trial court refused to modify its instructions on the standards for notice and good faith, holding, first, that the appellant had no obligation to respond to a notice of immediate termination, as it would if it objected to an advance notice of intent to terminate, and second, that the implied duty of good faith would be breached if appellee's conduct deprived appellant of a benefit it reasonably expected. We find no error in the court's instructions.

rather argued that it was fact testimony, not opinion testimony. This argument understandably failed to persuade the trial court to admit Zeitz's testimony. Appellant then expressed a wish to introduce the calculations through its bookkeeper, but, fearing a similar objection to her opinion testimony, it failed to carry through this suggestion.

As noted, the trial court proceeded on the basis that all *opinion* evidence in a federal court trial had to be offered by an *expert.* Opinion evidence at this trial was regularly referred to as "expert opinion" or "expert testimony." *See, e. g.,* App. at 391a, 393a–95a. The proffered opinion evidence was rejected because appellant failed to identify Zeitz and the bookkeeper prior to trial as expert witnesses in accordance with a pre-trial order.[3]

Both the parties and the trial court failed to distinguish between opinion testimony which may be introduced by lay witnesses and that which requires experts. The modern trend favors the admission of opinion testimony, provided that it is well founded on personal knowledge and susceptible to specific cross-examination.[4] *See* 3 J. Weinstein, Evidence ¶ 701[02] at 701–9 and 701–17 (1978). A lay witness in a federal court proceeding is permitted under Fed.R.Evid. 701 to offer an opinion on the basis of relevant historical or narrative facts that the witness has perceived. Entitled "Opinion Testimony by Lay Witnesses," Rule 701 provides:

If the witness is not testifying as an expert, his testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of his testimony or the determination of a fact in issue.

Fed.R.Evid. 701. The expression of opinions or inferences by a lay witness is permitted because of the qualification in Rule 701(a) that the factual predicate of the testimony be within the witness's perception. This qualification simply reflects a recognition of the limitation embodied in Fed.R. Evid. 602,[5] that a witness must have "personal knowledge of the matter" in order to testify to it.

■ The personal knowledge of appellant's balance sheets acquired by Zeitz as Teen-Ed's accountant was clearly sufficient under Rule 602 to qualify him as a witness eligible under Rule 701 to testify to his opinion of how lost profits could be calculated and to inferences that he could draw from his perception of Teen-Ed's books.

The fact that Zeitz might have been able to qualify as an expert witness on the use of accepted accounting principles in the calculation of business losses should not have prevented his testifying on the basis of his knowledge of appellant's records about how lost profits could be calculated from the data contained therein. *See, e. g., Farner v. Paccar, Inc.,* 562 F.2d 518 (8th Cir. 1977). In *Farner* the court held that a trucking

3. The pre-trial order provided, *inter alia*:
    11. *EXPERT WITNESSES*:
       Within sixty days of the date that a decision is rendered on defendant Kimball's motion for summary judgment, plaintiff will identify all expert witnesses who are expected to testify in this matter and provide defense counsel with the information as set forth in F.R.Civ.P. 26(b)(4).
       Defendants will have sixty days thereafter in which to identify all defense experts who are *expected to testify, and provide compara*ble information to plaintiff's counsel.
    App. at 60a.

4. Although lay opinion evidence was once disapproved *and presumed to be excludable, today* that is no longer true. *See* J. Wigmore, Evidence §§ 1917, 1918, and 1929 (Chadbourn rev.

1978). A claim that testimony consists of opinion testimony does not render it inadmissible. *SEC v. Texas Gulf Sulphur Co.,* 446 F.2d 1301, 1305 (2d Cir.), *cert. denied,* 404 U.S. 1005, 92 S.Ct. 561, 30 L.Ed.2d 558 (1971).

5. Rule 602, entitled "Lack of Personal Knowledge," provides:
    A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that he has personal knowledge of the matter. Evidence to prove personal knowledge may, but need not, consist of the testimony of the witness himself. This rule is subject to the provisions of rule 703, *relating to opinion testimony by expert wit*nesses.

firm owner who had been in the business almost thirty years could testify to "the simple use" of safety chains on a certain type of truck "either as a lay witness speaking within his own knowledge and perception, *see* Fed.R.Evid. 701, or as an expert qualified by knowledge, experience or skill. *See* Fed.R.Evid. 702. . . . " 562 F.2d at 529 (citation omitted).

■ Testifying as a layman, Zeitz would be more restricted than if he were proffering opinion evidence as an expert. *See* Fed.R.Evid. 702 and 703. The essential difference, however, is that a qualified expert may answer hypothetical questions. *See* Fed.R.Evid. 703 and accompanying Notes of Advisory Committee.[6] Thus, an expert witness may not only testify from "facts or data . . . perceived by" him, but also from what is "made known to him at or before the hearing." Fed.R.Evid. 703. A projection of lost profits based on evidence of record regarding decreased sales of a certain product may not accurately be characterized as "hypothetical." Thus, we determine that Zeitz's testimony would not necessarily have extended beyond the bounds of his personal knowledge.

We interpret the pre-trial ruling in this case to have required identification of expert witnesses under Rules 702 and 703, but not of lay witnesses under Rule 701. We further determine that because Zeitz, and possibly the bookkeeper, could have testified on the basis of facts or data perceived by them in their respective capacities as accountant and bookkeeper for Teen-Ed, their opinion evidence was admissible under Rule 701 and appellant should have been able to use the testimony of either witness.

Accordingly, the judgment of the district court will be vacated and the proceedings remanded for a new trial on damages only. Each side to pay its own costs.

---

**6.** Rule 703, entitled "Bases of Opinion Testimony by Experts," provides:

> The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to him at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence.

The Advisory Committee notes explain that the presentation of the opinion at trial may be via the technique of "the familiar hypothetical question."