OPINION OF THE COURT
BECKER, Circuit Judge.
The defendant, Benton Harbor Engineering (“Benton Harbor”), appeals from an order of the district court denying its motion for a new trial, and also from a judgment against it on a contribution claim brought by Asplundh Tree Expert Co. (“Asplundh”) and by National Union Fire Insurance Company of Pittsburgh (“National Union”), Asplundh’s liability insurance carrier. Asplundh and National Union sought to recover some or all of their costs in settling a wrongful death suit brought against Asplundh by the estate of Jeffrey Sackerson, who was killed when an Asplundh aerial lift in which he was working *1193 fractured (Benton Harbor having manufactured the component part of the aerial lift which allegedly failed). Benton Harbor’s principal argument on appeal is that the district court erred in permitting Asplundh to adduce lay opinion testimony pursuant to Federal Rule of Evidence 701 regarding what appear to be complex technical issues concerning the cause of the metal failure.
Rule 701, which contemplates admission of lay opinions rationally based on personal knowledge so as to be helpful to the trier of fact, was primarily designed to allow lay individuals to express opinions that are in reality only a shorthand statement of fact. However, this court, like other courts, has commonly interpreted the rule to permit individuals not qualified as experts, but possessing experience or specialized knowledge about particular things, to testify about technical matters that might have been thought to lie within the exclusive province of experts. This flexible, arguably expansive, interpretation of Rule 701 appears to be consistent with its text. Where, however, a party proffers a witness expressing an opinion on matters such as the design of hydraulic cylinders or the cause of metal failure, the trial court must be rigorous in assuring that the lay witness satisfies the strictures of Rule 701. In particular, the proponent of technical lay opinion testimony must show that the testimony is based on sufficient experience or specialized knowledge and also show a sufficient connection between such knowledge or experience and the lay opinion such that the testimony may be fairly considered to be “rationally based on the perception of the witness” and truly “helpful” to the jury.
Given the standard we articulate today for the admission of lay opinion evidence of a technical nature, we conclude that the district court’s ruling was based on an impermissible interpretation of Rule 701, because the court failed to examine with sufficient rigor whether the testimony in question was informed by sufficient experience or specialized knowledge. More particularly, in order to satisfy the rationally derived and helpfulness standards of Rule 701, Asplundh needed to demonstrate that the witness possessed sufficient experience or specialized knowledge which qualified him to offer a technical opinion regarding the cause of metal failure and the design of hydraulic cylinders. While a lay witness could acquire this additional insight either by formal education or practical experience, it appears the witness at issue simply possessed neither. Because the admission of the testimony was not harmless, we will reverse the judgment of the district court and remand for further proceedings.
Although Asplundh and National Union cross appeal, arguing that the district court erred in failing to award prejudgment interest, we do not, in view of our result, reach this question.

I. Facts and Procedural History

Jeffrey Saekerson was killed while operating an aerial lift, manufactured by Asplundh, which was mounted onto a truck chassis and used in tree trimming operations. At the time, Saekerson was employed by the city of Portland, Oregon, which owned, operated, and maintained the aerial lift. When Sacker-son’s estate filed a wrongful death suit against Asplundh, Asplundh and its insurer, National Union, brought a third-party action seeking contribution and indemnity from Benton Harbor, the manufacturer of the lower boom cylinder containing the piston rod which allegedly fractured and caused the accident. The jury returned a verdict for As-plundh and National Union, finding Asplundh eighty percent responsible and Benton Harbor twenty percent responsible. The district court entered judgment for Asplundh and National Union in the amount of $185,881.60, twenty percent of the Saekerson settlement. Post-trial motions were filed by both parties. Asplundh and National Union sought prejudgment interest, and Benton Harbor sought a new trial based on alleged error in admitting the lay opinion testimony of Michael Jones. Both motions were denied by the district court. These appeals followed.
Jones, the witness whose testimony is at issue, had been fleet maintenance supervisor for the City of Portland for more than ten years at the time of the accident. Jones’s responsibilities covered all city equipment, including the Asplundh aerial lift. He supervised between sixty and one hundred employ *1194 ees, six or seven city repair shops, and the maintenance of 1385 pieces of equipment.
After the accident, Jones and his employees took apart and inspected the aerial lift’s boom assembly in the City of Portland’s shop. During this inspection, Jones observed the rod from a distance of about fifteen inches. In his deposition, Jones stated his opinion that a component of the lower boom assembly — the rod end — had fractured. The rod end was a threaded metal rod that was screwed into a threaded metal casing called the rod cylinder. A hole was drilled through both the casing and the rod end, and a metal pin was inserted through the hole. See App. at 315.
Jones expressed the opinion that the fracture was caused by metal fatigue and was attributable to the design of the rod end. Id. at 161,167. Specifically, he stated that there was a “problem” because Benton Harbor’s design called for a hole to be drilled through the rod end at a point where it was threaded. Id. Moreover, Jones noted that the cylinder rod had oxidized around a portion of the break which was a different, duller color than the rod’s fresh break. From this, Jones concluded that the break occurred in stages. Jones also related that the break was in a threaded area where a hole had been drilled through the rod. Jones concluded that the rod fatigued inside the rod eye, causing the accident, stating that the stop block on the lower boom cylinder rods did not contribute to the accident.[1]
In particular, Jones attributed the accident “to the way the rod was drilled through, and the fact that the rod eye was screwed on on a threaded — two threaded surfaces.” App. at 167; App. at 160-61 (“The reasons [for the accident] are two: one, the hole through the pin caused ... the rod to be weakened and, two, the threads ... on the rod itself caused the breaking point. They were sharp, and it broke right at the point where all of those things intersected. That was the problem. There’s no doubt in my mind about it....”). He questioned the appropriateness of this rod end design, stating that before his examination he “had no idea that this thing was threaded on and then drilled and pinned, up to that point,” since he “had never seen a cylinder that size configured that way.” Id. Jones reiterated that he “never saw other cylinders configured that way,” and that he “kn[e]w how other cylinders were configured differently,” since he was a production control manager for a company that produced hydraulic cylinders. Id. Moreover, Jones asserted expertise in this area, declaring, “I think I know how to make hydraulic cylinders.” Id.
Key portions of Jones’s deposition were read to the jury over Benton Harbor’s objection. The district court overruled the objections to the reading of the deposition testimony, allowing Jones to testify as a lay witness expressing an opinion under Rule 701. Fed. R.Evid. 701. Benton Harbor argues that Jones’s technical deposition testimony is not the type of lay opinion evidence properly admissible under Rule 701.
Our review is plenary, since the district court’s ruling turns on an interpretation of Rule 701, which would permit the admission of technical lay opinion evidence in this ease. A determination regarding the scope of evidence properly admitted under a Federal Rule of Evidence is a question of law subject to plenary review. See DeLuca v. Merrell Dow Pharm. 911 F.2d 941, 945 (3d Cir.1990); U.S. v. Furst, 886 F.2d 558, 571 (3d Cir.1989) (“To the extent that the district court’s admission of [evidence] was based on an interpretation of the Federal Rules of Evidence, we exercise plenary review.”).

II. The Rule 701 Jurisprudence

A.
In determining whether Jones’s opinion testimony was properly admitted by the district court, we must determine the scope of *1195 Federal Rule of Evidence 701, which provides:
If the witness is not testifying as an expert, the witness’ testimony in the form of opinions or inferences Is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness’ testimony or the determination of a fact in issue.
Fed.R.Evid. 701.
Rule 701 represents a movement away from the courts’ historically skeptical view of lay opinion evidence. At common law, witnesses not qualifying as experts were not permitted to draw conclusions which could be characterized as opinion testimony, but rather were required to limit their testimony to facts, those things “they had seen, heard, felt, smelled, tasted, or done.” Hon. Charles R. Richey, Proposals To Eliminate the Prejudicial Effect of the Use of the Word “Expert” Under the Federal Rules [of] Evidence in Civil and Criminal Jury Trials, 154 F.R.D. 537, 542 (1994) (“Mere opinions were considered unreliable bases for testimony.”).
This rigid distinction between fact and opinion led to numerous appeals and pervasive criticism by commentators. See generally 3 Jack B. Weinstein & MaegaRet A. Bergee, Weinstein’s Evidenoe ¶ 701[01] (1994) [hereinafter Weinstein]. Wigmore declared, in the first edition of his treatise, that this distinction “has done more than any one rule of procedure to reduce our litigation towards a sense of legalized gambling.” 3 John H. Wigmore, Evidence § 1929, at 2563 (1st ed. 1904); see also Willard L. King & Douglas Pillinger, Opinion Evidence in Illinois 8 (1942) (“The American courts have had a great struggle with a rule which appeared to require them to admit statements of fact and exclude all inferences of the witness. Such a rule is quite impossible of application: all statements contain inferences.”); James B. Thayer, A Preliminary Treatise on Evidence at the Common Law 524 (1898) (“In a sense all testimony to matter of fact is opinion evidence, i.e. it is a conclusion formed from phenomena and mental impressions.”).
Characteristically, however, the most eloquent criticism of this common-law restriction on lay testimony was made by Judge Learned Hand:
Every judge of experience in the trial of causes has again and again seen the whole story garbled, because of insistence upon a form with which the witness cannot comply, since, like most men, he is unaware of the extent to which inference enters into his perceptions. He is telling the “facts” in the only way that he knows how, and the result of nagging and checking him is often to choke him altogether, which is, indeed, usually its purpose.
Central R.R. Co. v. Monahan, 11 F.2d 212, 214 (2d Cir.1926). Judge Hand also stated:
The truth is, as Mr. Wigmore has observed at length, that the exclusion of opinion evidence has been carried beyond reason in ’this country, and that it would be a large advance if courts were to admit it with freedom. The line between opinion and fact is at best only one of degree, and ought to depend solely upon practical considerations, as, for example, the saving of time and the mentality of the witness.
Id. (citation omitted).
These concerns about the restrictions on lay opinion testimony, combined with a more general liberalization in those rules of evidence that operated to deprive the fact-finder of relevant evidence,[2] led to the adoption of Rule 701. The Advisory Committee Note to the rule reflects the fact that Rule 701’s liberalization of the admissibility of opinion evidence is rooted in the modern trend away from fine distinctions between fact and opinion and toward greater admissibility, tempered with an understanding that the adver *1196 sary process, and more specifically, cross-examination will correct any problems:
The rule retains the traditional objective of putting the trier of fact in possession of an accurate reproduction of the event.
Limitation (a) is the familiar requirement of first-hand knowledge or observation.
Limitation (b) is phrased in terms of requiring testimony to be helpful in resolving issues. Witnesses often find difficulty in expressing themselves in language which is not that of an opinion or conclusion. While the courts have made concessions in certain recurring situations, necessity as a standard for permitting opinions and conclusions has proved too elusive and too unadaptable to particular situations for purposes of satisfactory judicial administration. Moreover, the practical impossibility of determining by rule what is a “fact,” demonstrated by a century of litigation of the question of what is a fact for purposes of pleading under the Field Code, extends into evidence also. The rule assumes that the natural characteristics of the adversary system will generally lead to an acceptable result, since the detailed account carries more conviction than the broad assertion, and a lawyer can be expected to display his witness to the best advantage. If he fails to do so, cross-examination and argument will point up the weakness. If, despite these considerations, attempts are made to introduce meaningless assertions which amount to little more than choosing up sides, exclusion for lack of helpfulness is called for by the rule.
Fed.R.Evid. 701 advisory committee’s note (citations omitted).
The prototypical example of the type of evidence contemplated by the adoption of Rule 701 relates to the appearance of persons or things, identity, the manner of conduct, competency of a person, degrees of light or darkness, sound, size, weight, distance, and an endless number of items that cannot be described factually in words apart from inferences. See Mason Ladd, Expert Testimony, 5 Vand.L.Rev. 414, 417 (1952). The more liberal approach to lay opinion testimony of this type gained acceptance as a rule of “convenience,” which allowed for “ ‘shorthand renditions’ of a total situation, or [for] statements of collective facts.” 1 MoCormiCK on Evidenoe 44 & n. 16 (4th ed. 1992); see also Mark McCormick, Opinion Evidence in Iowa, 19 DRAKE L.Rev. 245, 248 (1970) (viewing this rule as allowing for a “shorthand rendering of the facts”).
As recognized by Professor Saltzburg, testimony that a person was “excited” or “angry” is more evocative and understandable than a long physical description of the person’s outward manifestations. Stephen A. Saltzburg et al, Federal Rules of Evidence Manual 1032 (6th ed. 1994) [hereinafter Saltzburg]. For example, a witness who testifies that an individual whom he saw staggering or lurching along the way was drunk is spared the difficulty of describing, with the precision of an orthopedist or choreographer, the person’s gait, angle of walk, etc. See, e.g., United States v. Mastberg, 503 F.2d 465 (9th Cir.1974) (permitting under Rule 701 the testimony of a customs inspector that the defendant appeared nervous); State v. Hall, 353 N.W.2d 37, 43 (S.D.1984) (permitting police officers to give lay opinion concerning defendant’s intoxicated state)[3]; Kerry Coal Co. v. United Mine Workers, 637 F.2d 957, 967 (3d Cir.) (allowing the admission of testimony that plaintiffs employees were “nervous and afraid” as a shorthand report of witnesses’ observations of employee reactions), cert. denied, 454 U.S. 823, 102 S.Ct. 109, 70 L.Ed.2d 95 (1981).
Perhaps the best judicial description of this type of testimony under Rule 701 is found in United States v. Yazzie, 976 F.2d 1252 (9th Cir.1992). Yazzie was charged with statutory rape under a federal statute that permitted a defense of reasonable mistake as to the age of the minor. At trial, Yazzie asserted that he reasonably believed that the minor, age fifteen-and-a-half, was over the statutory age of sixteen. In support of this contention, Yazzie called several wit *1197 nesses who offered to testify that, as of the date of the incident, their observations caused them to believe the minor to be between the age of sixteen and twenty. The trial court excluded this testimony as impermissible lay “opinion” and limited the witnesses’ testimony to “facts,” such as that the minor smoked cigarettes, wore make-up, and drove a car. The Court of Appeals reversed, stating:
We understand Rule 701 to mean that opinions of non-experts may be admitted where the facts could not otherwise be adequately presented or described to the jury in such a way as to enable the jury to form an opinion or reach an intelligent conclusion. If it is impossible or difficult to reproduce the data observed by the witnesses, or the facts are difficult of explanation, or complex, or are of a combination of circumstances and appearances which cannot be adequately described and presented with the force and clearness as they appeared to the witness, the witness may state his impressions and opinions based upon what he observed. It is a means of conveying to the jury what the witness has seen or heard.
Id. at 1255 (quoting United States v. Skeet, 665 F.2d 983, 985 (9th Cir.1982) (internal quotation marks omitted)). The court concluded that the testimony of the witnesses satisfied Rule 701’s requirements:
Here, the opinion testimony not only meets the requirements of sub-part (a) of Rule 701, but of both the alternative sub-parts of (b). The testimony helps in the understanding of the witnesses' descriptive testimony and in determining a critical fact at issue — whether it was reasonable for Yazzie to believe that the minor was sixteen or older.
In the case before us, the jurors could not themselves assess how old the minor looked at the time of the incident: by the time of the trial, the minor was almost seventeen years old, and her appearance was undoubtedly substantially different than it had been on the night in question, a year and a half earlier. Thus, the jurors were wholly dependent on the testimony of witnesses. Yet the witnesses were permitted to testify only to the minor’s describable features and behavior. Their testimony was no substitute for a clear and unequivocal statement of their opinions. It did not tell' the jury that these witnesses believed the minor to be at least sixteen years old at the time of the'incident.
Id. (footnote omitted).
Other examples of this type of quintessential Rule 701 opinion testimony include identification of an individual,[4] the speed of a vehicle,[5] the mental state or responsibility of another,[6] whether another was healthy,[7] the *1198 value of one’s property,[8] and other situations in which the differences between fact and opinion blur and it is difficult or cumbersome for the examiner to elicit an answer from the witness that will not be expressed in the form of an opinion.[9] See generally Saltzburg, supra, 1031-36; Weinstein, supra, ¶ 701[02]. These cases, it is important to add, all meet the core definitional terms of Rule 701 — the opinion is based upon personal knowledge, is rationally based thereon, and is helpful to the trier of fact.
B.
While many, if not most, of the cases decided under Rule 701 are of the genre just described, the jurisprudence has expanded beyond this core area to permit lay persons to express opinions that are not shorthand statements of fact, so long as the personal knowledge, rational basis, and helpfulness standards of Rule 701 are met. In particular, courts have permitted witnesses with firsthand knowledge to offer lay opinion testimony where they have a reasonable basis— grounded either in experience or specialized knowledge — for arriving at the opinion expressed. A conclusion by the trial court that the witness possessed sufficient experience or specialized knowledge has thus often been used to determine that the witness’s opinion testimony satisfies the requirements that the opinion be both “helpful to a clear understanding ... of a fact in issue” and “rationally based” upon the witness’s perception, as expressed in the text of Rule 701.
Rule 701 cases satisfying these requirements are arrayed along a spectrum, ranging from what might be described as modest departures from the core area of lay opinion testimony, described above, to those which approach the ambit of Rule 702 expert opinion. A good example of the former is our opinion in Teen-Ed, Inc. v. Kimball International, Inc., 620 F.2d 399 (3d Cir.1980) in which we held that a lay opinion from the plaintiffs accountant and bookkeeper was proper:
The personal knowledge of appellant’s balance sheets acquired by Zeitz as Teen-Ed’s accountant was clearly sufficient under Rule 602 to qualify him as a witness eligible under Rule 701 to testify to his opinion of how lost profits could be calculated and to inferences that he could draw from his perception of Teen-Ed’s books.
The fact that Zeitz might have been able to qualify as an expert witness on the use of accepted accounting principles in the calculation of business losses should not have prevented his testifying on the basis of his knowledge of appellant’s records about how lost profits could be calculated from the data contained therein.
Id. at 403.
Similar to Teen-Ed are our opinions in Joy Manufacturing Co. v. Sola Basic Industries, Inc., 697 F.2d 104, 110-12 (3d Cir.1982), and Eckert v. Aliquippa & Southern Railroad Co., 828 F.2d 183, 185 n. 5 (3d Cir.1987). In Joy, an action against a manufacturer for *1199 damages resulting from the failure of two heat treating furnaces, we held that it was an abuse of discretion for the district court to exclude the testimony of plaintiffs supervisor of production control concerning the percentage of plaintiffs losses resulting from hearth problems. Given that the witness in question had extensive personal knowledge of plaintiffs plants and the furnaces in question, we concluded that the witness’s opinion was rationally based on his personal knowledge and that the witness’s inability to state precisely why a furnace was inoperable at a particular time was proper material for cross-examination rather than a basis for inadmissibility.
In Eckert, a brakeman sued a railroad under the Federal Employers Liability Act and Safety Appliance Act (SAA) for injuries suffered when the locomotive he was riding on collided with another locomotive and both ears derailed upon failing to couple. In concluding that the district court had improperly held the SAA inapplicable to the case, we noted that the plaintiff, who had offered testimony relevant to establishing SAA violations, was qualified to testify by virtue of his thirty years experience and familiarity with railroad procedures as to whether injuries would have occurred had the cars been properly coupled. A number of other cases also fit into this category (that is, they represent a modest expansion from the core lay opinion testimony contemplated by the adoption of Rule 701).[10]
C.
We recognize, however, that some lay opinion cases have begun to move even further beyond the core area of Rule 701 opinion testimony and have begun, in a subtle gradation, to permit lay witnesses to express their opinions in areas in which it would ordinarily be expected that only an expert qualified under Rule 702 could give such testimony, such as whether a product design was defective or whether certain factors (e.g., a product defect) caused an accident.
For example, in Soden v. Freightliner Corp., 714 F.2d 498, 510-12 (5th Cir.1983), the Fifth Circuit permitted a lay witness to opine that the design of a truck was dangerous and defective in a product liability action involving a post-collision truck fire. The plaintiffs in this action claimed that the design of a Freightliner truck’s fuel system was unreasonably dangerous and caused a post-collision fuel fire which killed plaintiffs’ decedent. Id. at 500. The “thrust” of the plaintiffs’ argument was that the Freightliner’s fuel tanks, which were mounted on the sides of the truck under the cab doors, were dangerous. Id. As the Soden court explained:
In particular,, they [the plaintiffs] also argued that the brackets securing the steps *1200 to these fuel tanks had pointed ends which, in the event of a rollover, could puncture the fuel tanks. The resulting hole or holes could release diesel fuel near engine components hot enough to ignite the fuel, causing a fire in the engine-cab area.

Id.

The contested lay witness, Lasere, was a service manager who supervised the preventive maintenance of about 500 trucks and was in charge of the daily maintenance of about sixty trucks, mostly Freightliners, including the truck involved in the accident. Id. at 510. Lasere also was in charge of removing the truck from the scene of the accident and observed firsthand the damage to the fuel tank. Id. At trial, he testified for the plaintiffs regarding the cause of the accident and the dangerousness of the design; specifically, Lasere testified that step brackets had punctured the fuel tank. Id. at 510-11. In particular, he stated that in the case at hand, and in two or three other Freightliner accidents, he had observed “puncture holes in the fuel tanks at the location of the step brackets.” Id. at 510. He then gave his opinion that the step brackets were the cause of the puncture holes. After Soden’s accident, Lasere testified that he had modified the step brackets in the remaining Freight-liners in his fleet by “sawing off [the] pointed ends;” and he expressed the opinion that the bracket’s original design was “dangerous.” Id. at 511.
Sustaining the admission of Lasere’s opinion testimony, the Fifth Circuit stated:
No great leap of logic or expertise was necessary for one in Lasere’s position to move from his observation of holes in Freightliner fuel tanks at the location of the step brackets, and presumably caused by them, to his opinion that the situation was dangerous.... Lasere’s testimony with respect to the dangerousness of the step brackets was also obvious, given the modification which he testified he made to them after all he had seen.
Id. at 512. The court added, however, that Lasere’s testimony on this point “did constitute an opinion which might have been better given by one more formally an expert.” Id. And the court subsequently reiterated that “although Lasere’s opinion with respect to ‘dangerousness’ may have been more properly made by one more formally an expert, given the particular facts of this case, we conclude that no reversible error occurred in its admission.” Id. (emphasis supplied).
In our view, cases like Soden stretch the doctrinal boundaries of Rule 701 opinion testimony.[11] However, we agree with the Fifth Circuit that such testimony does fall within the ambit of Rule 701’s requirement that a lay witness’s opinion be rationally based on firsthand observations and helpful in determining a fact in issue. Though we agree with Benton Harbor that the admission of lay opinion evidence in these technical areas (e.g., concerning the existence vel non of a product defect or whether an accident was caused by a certain condition) can result in an attenuated form of expert opinion evidence far removed from the considerations, described supra in Part II.A, animating the lay opinion rule,[12] it is not for us to rewrite the rule or reinterpret Rule 701 across the *1201 board.[13] Accordingly, we refuse to hold, as Benton Harbor requests, that all lay witnesses offering opinions that require special knowledge or experience must qualify under Rule 702.[14]
However, the admissibility of opinion evidence under the strictures of Rule 701 is not without limit. Rule 701’s requirement that the opinion be “rationally based on the perception of the witness” demands more than that the witness have perceived something firsthand; rather, it requires that the witness’s perception provide a truly rational basis for his or her opinion. Similarly, the second requirement — that the opinion be “helpful to a clear understanding of the witness’s testimony or the determination of a fact in issue” — demands more than that the opinion have a bearing on the issues in the case; in order to be “helpful,” an opinion must be reasonably reliable. In other words, Rule 701 requires that a lay opinion witness have a reasonable basis grounded either in experience or specialized knowledge for arriving at the opinion that he or she expresses. See Paiva, 892 F.2d at 157 (“Individual experience and knowledge of a lay witness may establish his or her competence, without qualification as an expert, to express an opinion on a particular subject outside the realm of common knowledge.”).
In sum, for lay opinion as to technical matters such as product defect or causation to be admissible, it must derive from a sufficiently qualified source as to be rehable and hence helpful to the jury. In order to satisfy these Rule 701 requirements, the trial judge should rigorously examine the reliability of the lay opinion by ensuring that the witness possesses sufficient special knowledge or experience which is germane to the lay opinion offered. Our decision does not, as suggested by the dissent, “limit the application of Rule 701 to human appearance, human conditions, and, perhaps, vehicle speed and property value,” dissent infra at 1214, nor does it eliminate lay opinion as an aid to the jury in technical matters. Rather, as we have stated, a lay witness with firsthand knowledge can offer an opinion akin to *1202 expert testimony in most cases, so long as the trial judge determines that the witness possesses sufficient and relevant specialized knowledge or experience to offer the opinion.
The importance of these precepts is reinforced by the recent decision in Daubert v. Merrell Dow Pharmaceuticals, Inc., — U.S. -, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). Daubert, of course, deals with the evaluation of the scientific testimony of an expert focusing upon the reliability of the scientific method on which the conclusions of an expert are based. But one of the “Dau-bert factors” is the expert’s knowledge and qualifications, and the centerpiece of the Daubert regime is the gatekeeping role of the trial judge, whose duty it is to screen challenged expert testimony and assure that it is sufficiently reliable to be of assistance to the jury. Id., 113 S.Ct. at 2794-95; In re Paoli R.R. Yard PCB Litig., 35 F.3d 717, 748 (3d Cir.1994) (“Daubert makes clear for the first time at the Supreme Court level that courts have to play a gatekeeping role with regard to experts.”). While we are careful not to suggest that Daubert applies to Rule 701, we believe that its spirit also counsels trial judges to carefully exercise a screening function with respect to Rule 701 opinion testimony when the lay opinion offered closely resembles expert testimony.[15]
Though we acknowledge that important differences between lay opinion evidence and expert testimony exist, justifying a greater level of scrutiny of Rule 702 expert opinion evidence,[16] we do not believe such differences effectively vitiate the need for some judicial gatekeeping on the part of the trial judge in the case of lay opinion testimony of a technical nature. Allowing a witness, with first-hand knowledge, to offer a technical opinion which he lacks the necessary knowledge and experience to make, runs afoul of the requirements of Rule 701. It is clear, therefore, that in appropriate circumstances a trial court should exclude proffered evidence, otherwise admissible as relevant under Fed R.Evid. 401, on grounds that the witness’s knowledge and the consequent basis for his or her rational perception are insufficient under the rule.
The judicial Rule 701 screening that we speak of for cases such as this one is not very different from the screening that attends the ordinary expert qualification ruling. See Paoli, 35 F.3d at 740-46. In determining whether a lay witness has sufficient special knowledge or experience to ensure that the lay opinion is rationally derived from the witness’s observation and helpful to the jury, the trial court should focus on the substance of the witness’s background and its germaneness to the issue at hand. Though particular educational training is of course not necessary, the court should require the proponent of the testimony to show some connection between the special knowledge or experience of the witness, however acquired, and the witness’s opinion regarding the disputed factual issues in the case.
The lay opinion testimony held to be admissible in our prior Rule 701 decisions satisfied this standard. In Teen-Ed, Inc. v. Kimball International, Inc., 620 F.2d at 399, the accountant who testified as a lay witness had very particular and quite extensive prior experience with Teen-Ed’s books, which allowed him to properly calculate for the court how lost profits should be determined and to draw inferences from his examination of the *1203 accounts.[17] Id. at 403. And in Joy Manufacturing Co. v. Sola Basic Industries, Inc., 697 F.2d at 104, the lay witness had extensive personal knowledge of Joy’s [the plaintiffs] plants, its on-going heat treating processes, and the two furnaces in question,” and we stated that he had “sufficient personal knowledge of Joy’s heat treating facility to make an estimate of what amount of downtime was due to the hearth problems.” Id, at 111-12.
Moreover, in In re Merritt Logan, Inc., 901 F.2d 349 (3d Cir.1990), an action by the purchaser of an allegedly defective refrigeration system against the seller, installer, and manufacturer of the system, the principal shareholder of the plaintiff (Logan) was permitted to express an opinion as a lay witness concerning his company’s lost profits. In addition, another witness, Gilchrist, who had surveyed the site where the refrigeration system was to be located prior to its installation and had made an estimate of the weekly sales that could be achieved at that site, was permitted to testify concerning his survey. We held that the admission of these lay opinions was proper under Rule 701, stating: “Mr. Logan’s personal knowledge of his business and Gilchrist’s personal knowledge of how he prepared his survey were sufficient to make these witnesses eligible under Rule 701 to testify as to how lost profits could be calculated.” Id. at 360.[18]
Mindful of the need for the proponent of technical lay opinion testimony to show that the witness possesses sufficient knowledge or experience which is germane to the lay opinion offered, we turn to the facts of this case.

III. Application of Rule 701 to Jones’s Opinion Testimony

To recapitulate, the testimony in question here is Jones’s opinion that the accident had resulted from metal fatigue inside a piston rod which he attributed to the faulty design of Benton Harbor’s rod end. The district court did not limit Jones’s testimony to describing the state of the metal inside the rod-end and the fact that it had broken. Rather, it allowed Jones to offer a lay opinion as to the cause of the break. Specifically, Jones stated that there was a “problem” because Benton Harbor’s design called for a hole to be drilled through the rod end at a point where it was threaded. App. at 161 & 167. The district court admitted Jones’s testimony pursuant to Rule 701, since it concluded it was within “the ambit of common sense.”
Asplundh contends that the district court properly admitted Jones’s opinion since the opinion satisfies Rule 701’s requirements in that it was rationally based on Jones’s firsthand observations of the fractured rod and helpful to a determination of a fact in issue. We agree that Jones’s testimony satisfied Rule 701’s requirement of firsthand knowledge since: (1) he saw the disassembled lift shortly after the accident from a distance of approximately fifteen inches; (2) he observed the colorations of the metal fracture surface; and (3) he saw the break in the threaded area where a hole had been drilled through the rod. But we do not agree that his opinion was rationally based on these observations or helpful to the jury’s determination of a fact in issue because in proffering Jones’s *1204 testimony, Asplundh failed to satisfy the standard we articulate today for lay opinion evidence.
In particular, we conclude that the district court applied an incorrect legal standard under Rule 701 to the extent that it failed to require Asplundh to show sufficient knowledge or experience and a sufficient connection between Jones’s special knowledge or experience and his opinion regarding the cause of the accident and the design of the hydraulic cylinder.[19] While the district court did summarily conclude at one point in its analysis that Jones’s “employment experience” gave him “substantial knowledge in this area,” we do not believe it examined with sufficient rigor the question whether Jones possessed the knowledge or experience necessary to offer an opinion of such a technical nature.
Jones was the fleet maintenance supervisor for the city of Portland for more than ten years, supervising the maintenance of 1385 variegated pieces of equipment and six or seven repair shops. Jones was present when the aerial lift was disassembled and observed the damage to the rod. Asplundh suggests that, as in Soden, the conclusions and opinions expressed by Jones were those that a normal individual in his position with his experience would have drawn. See Soden, 714 F.2d at 512. But Benton Harbor’s response is telling. It points out that Jones lacked formal education; had not taken courses in metallurgy, material failures, or metal fatigue; and had not designed a hydraulic cylinder. He had one year of college studies plus other job-related courses. Moreover, Jones had never conducted any studies of materials or material compositions. Besides having never designed a hydraulic cylinder, he had never personally participated in manufacturing a hydraulic cylinder. Although he worked some seven or eight months as a production control manager for a company which used hydraulic cylinders in their product, in that position he was responsible only for initiating manufacture and had no design responsibilities notwithstanding his bold assertion, “I think I know how to make hydraulic cylinders.” App. at 168.
The question we are presented with is whether it was permissible for Jones to express the opinion that the rod end had broken due to metal fatigue and that the design of the rod end was a “problem.” App. at 160-61 (“The reasons [for the accident] are two: one, the hole through the pin caused ... the rod to be weakened and, two, the threads ... on the rod itself caused the breaking point. They were sharp, and it broke right at the point where all of those things intersected. That was the problem. There’s no doubt in my mind about it_”). In our view these opinions are not ones that an average lay person would be equipped to draw, absent sufficient specialized knowledge or experience. We disagree with the dissent’s assertion that “[fjatigue failure of metal is not unfamiliar” to persons “such” as Jones, dissent infra at page 1212, and simply do not believe that the average lay person, absent sufficient knowledge or experience with metals, is qualified to offer a meaningful opinion on questions of metal fatigue of this nature. Metal fatigue is a technical concept. There are many reported eases in which experts have testified (and disagreed) as to whether metal fatigue could be detected based on a post-accident examination,[20] but we have not found a single reported case in which a lay witness has given such testimony. The consistent use of experts to testify re *1205 garding such questions underscores the technical nature of Jones’s opinion.
In describing this testimony as within the “ambit of common sense,” the district court would characterize Jones’s testimony as equivalent to the observation that “if you take a piece of metal and put in a vice and bend it back and forth enough times, it fatigues and it breaks.” The dissent agrees. But Jones’s opinion was far more technical and, in particular, attributed the accident to the manner in which Benton Harbor had chosen to design the rod end. See App. at 167-68 (Jones attributed the accident to the fact that the “rod was drilled through, and the fact that the rod eye was screwed on on a threaded — two threaded surfaces,” and questioned this design since he “kn[e]w how to make hydraulic cylinders” and he “had never seen a cylinder that size configured that way”).
While the average lay person— after examining the rod end and seeing that it had broken in a spot where the rod end was threaded and a hole had been drilled through it — might well properly conclude under Rule 701 that the rod end had broken at what appeared to be its weakest point, such a person could not reasonably go further and conclude that the rod end was defectively weak at this point. The dissent contends that the admissibility of this testimony was proper since “this is a nation where many individuals grow up with extensive mechanical experience and capabilities.” Dissent infra at pages 1211-1212. We simply do not believe that the realm of common knowledge extends to such issues as the presence and cause of metal failure and the proper design of hydraulic cylinders. Given the requirements of Rule 701, Asplundh needed to demonstrate that Jones possessed relevant experience or specialized knowledge germane to his opinion in order to satisfy the rationally derived and helpfulness standards of the rule. While a lay witness may acquire this additional insight either by formal education or practical experience, it appears Jones simply possessed neither.[21]
Jones’s experience as Portland’s fleet maintenance supervisor, supervising the upkeep of 1385 pieces of equipment and six or seven repair shops, is inapplicable. While these are weighty responsibilities, they do not seem to have anything to do with designing or evaluating the design of machinery. By way of example, the maintenance supervisor for a fleet of rental cars would hardly be qualified to express an opinion on whether the braking system of a particular model was defectively designed, absent some special qualifying proffer. Moreover, as fleet maintenance supervisor, Jones was involved in supervising the maintenance of numerous types of equipment and had no special experience with metal failure or hydraulic cylinders. Likewise, Jones’s prior employment experience as a production control manager does not seem pertinent, since he had no design responsibilities. Equally inapplicable is Jones’s previous job as a riveter in the manufacture of blowoff fuel tanks for military aircraft and the fact that he repaired his own automobile. App. at 181. Neither appear to enhance Jones’s knowledge or experience to offer an opinion on metal fatigue or the design of hydraulic cylinders.
In support of the admission of Jones’s opinion testimony, Asplundh relies principally on the Fifth Circuit’s opinion in Soden, discussed supra, which, as we have stated, would likely satisfy the standard we articulate today. While we acknowledge that Jones’s testimony bears a certain similarity to Lasere’s opinion regarding the design of the Freightliner fuel tanks, we believe Jones simply lacked the unique experience which allowed Lasere, the witness in Soden, to properly offer his lay opinion.
The Fifth Circuit concluded that the testimony of Lasere was properly admitted under Rule 701 on the grounds that he had eighteen years of experience in repair and maintenance of the particular trucks involved in the accident and, importantly, he had actual *1206 ly modified these tracks, which were under his care, so as to prevent the alleged defect in the track’s design from rapturing the freightliner’s fuel tank in future accidents. Lasere actually examined on previous occasions an unknown number of Freightliners that had been involved in serious accidents (presumably, in light of the nature of his job, not a great number), and in two or three of those cases he had observed facts that provided a reasonable basis for inferring that the design of the step brackets had caused holes in one of the fuel tanks, which were located near the engine. Moreover, he had devised a simple means (sawing off the pointed ends) by which the step brackets might be made safer.
More importantly, Lasere’s opinion, regarding the dangerousness of the design of the Freightliner, was rationally derived from his particular experience with the Freightlin-ers’ fuel tanks.[22] This experience allowed the Fifth Circuit to conclude that Lasere had “very considerable practical experience and specialized knowledge.” Soden, 714 F.2d at 511. Given his unique experience, the court was able to conclude that his conclusion that the design of the step brackets was dangerous required “no great leap in logic or expertise.” Id. at 512.
While we agree with the dissent that the opinion admitted in Soden went, in a sense, beyond that offered by Jones since Lasere characterized the design of the Freightliner’s fuel tanks as “dangerous,” we believe, given Lasere’s unique knowledge and experience with the tracks fuel tanks, he was qualified to draw such an opinion. In contrast, Jones simply lacked anything resembling Lasere’s specialized knowledge or experience. In particular, Jones had never before taken these cylinders apart in association with similar accidents. Moreover, unlike Lasere, Jones had never taken any steps to modify what he perceived to be the faulty design of the rod end.
Asplundh does not respond to the problem of Jones’s lack of specialized knowledge and experience. Rather, it suggests that it is enough that Jones observed the rod end firsthand, that his opinion testimony helped the jury to determine the cause of the lift’s failure and the role played in it by the rod manufactured by Benton Harbor, and that Jones was subject to cross-examination. We disagree. As we have stated, under Rule 701 the trial judge must play some gatekeeping role so as to ensure that the rationally derived and helpfulness requirements of the rule are met.
To use a simple yet illustrative example, if an issue in a case was whether the sun revolved around the earth, and the proponents of the Ptolemaic system proposed to prove their case by lay opinion testimony, such testimony could satisfy Asplundh’s requirement of “firsthand” observation (“Ihave observed the sun firsthand for many years, and I have seen that each day it moves across the sky from the east to the west.”). Such testimony would also be helpful to the jury to the extent that it would tend to suggest a result that the jury should reach. And such testimony could be subjected to cross-examination by a proponent of the Co-perniean system. But it does not follow that this lay opinion testimony meets the rational basis or helpfulness requirements as they are contemplated by Rule 701 or that it would be admissible. Yet nothing in the district court’s analysis would have excluded such testimony.
IV. Conclusion
We are convinced that the court’s admission of Jones’s opinion testimony was not harmless and therefore represents reversible error, since we cannot conclude that “it is highly probable that the error did not contribute to the judgment.” Advanced Med. Inc. v. Arden Med. Sys., 955 F.2d 188, 199 (3d Cir.1992). As we have explained, the district court erred in admitting Jones’s testimony under Rule 701 by failing to apply its analysis with the rigor required in this type of case. More particularly, the district court *1207 needed to determine whether Jones’s knowledge or experience qualified him to offer an opinion which attributed the accident to metal failure and the allegedly improper design of Benton Harbor’s hydraulic cylinder. There is no indication in the record that Jones possessed sufficient knowledge or experience to allow Asplundh to satisfy the standard articulated today and obtain admission of Jones’s opinion. Nevertheless, we will remand the case to allow the district court to determine, in light of our opinion, whether to permit further proceedings to qualify Jones’s opinion. In the absence of such proceedings or the establishment of such qualification, the district court should order a new trial.
The judgment of the district court and its order denying the motion for a new trial will be reversed and the case remanded for further proceedings consistent with this opinion.

. Jones stated:
Well, it seems like — seemed to me that all the bulletins that came out after the fact, after Sackerson's death, were dealing with the stop blocks as if the stop blocks somehow would have saved his life. And there's no way I happen to believe that. Stop blocks didn't have a damn thing in the world to do with Sackerson's death.
App. at 166.

. The admissibility of expert opinion testimony was also more limited at common law and liberalized under the Federal Rules. Among other requirements, expert testimony was limited to those areas that were "not within the common knowledge of the average layman.” Bridger v. Union Railway Co., 355 F.2d 382, 387 (6th Cir.1966). With the enactment of the Federal Rules of Evidence the common law restrictions on expert testimony have been liberalized and the permissible content has been broadened.

. All state cases cited herein are decided under state rules of evidence identical or analogous to Rule 701 of the Federal Rules. As of this entry, some 28 states have adopted Federal Rule 701 without change. See Weinstein, supra, ¶ 701[03].

. United States v. Langford, 802 F.2d 1176, 1178-79 (9th Cir.1986) (admitting identification testimony with respect to persons depicted in a bank surveillance photograph), cert. denied, 483 U.S. 1008, 107 S.Ct. 3235, 97 L.Ed.2d 740 (1987); United States v. Allen, 787 F.2d 933, 935-37 (4th Cir.1986) (same), cert. denied, 488 U.S. 944, 109 S.Ct. 371, 102 L.Ed.2d 360 (1988); United States v. Farnsworth, 729 F.2d 1158, 1160-61 (8th Cir.1984) (same); United States v. Jackson, 688 F.2d 1121, 1125 (7th Cir.1982) (same), cert. denied, 460 U.S. 1043, 103 S.Ct. 1441, 75 L.Ed.2d 797 (1983).

. United States v. Carlock, 806 F.2d 535, 552 (5th Cir.1986) (recognizing that a "common illustration” of an admissible opinion under Rule 701 is “an expression of opinion by a lay observer of a car’s speed”), cert. denied, 480 U.S. 949, 950, 107 S.Ct. 1611, 1613, 94 L.Ed.2d 796, 798 (1987); see also Ernst v. Ace Motor Sales, Inc., 550 F.Supp. 1220, 1222-23 (E.D.Pa.1982) (admitting opinion testimony as to the point of impact of two vehicles from a police officer who did not observe a car accident, but arrived shortly thereafter), aff'd, 720 F.2d 661 (3d Cir.1983).

. United States v. Lawson, 653 F.2d 299, 303 (7th Cir.1981), cert. denied, 454 U.S. 1150, 102 S.Ct. 1017, 71 L.Ed.2d 305 (1982) (concluding that lay opinion testimony by FBI agents as to defendant’s sanity was properly admitted despite fact that, the agents had little opportunity to view the defendant); Lewisohn v. State, 433 A.2d 351, 355 (Me.1981) (concluding, in habeas corpus proceedings, that testimony by witness that a certain juror, prior to having been selected for jury, had preconceived notions that petitioner was guilty was an inference rationally based on the witness’s perception and helpful in determining a fact in issue, and therefore properly admitted).

. Singletary v. Secretary of HEW, 623 F.2d 217, 219 (2d Cir.1980) (permitting, in a reversal of a denial of disability benefits, the lay opinion of a claimant's son that his father was an alcoholic and unable to work); State v. Jennings, 333 N.C. 579, 430 S.E.2d 188, 201 (1993) (recognizing *1198 "the state of a person’s health” as "a proper subject[] for lay opinion”).

. See United States v. Ranney, 719 F.2d 1183, 1189 & n. 11 (1st Cir.1983) (permitting defrauded investors to testify as to the value of their investment); Neff v. Kehoe, 708 F.2d 639, 643-44 (11th Cir.1983) (reversing, in an action alleging misrepresentations in sale of a coin collection, the exclusion of testimony of the plaintif&'buyer, • who was determined competent to give lay opinion testimony as to the value of the coins, even though such testimony was self-serving and unsupported by other evidence); Garis v. Massey, 270 Ark. 646, 606 S.W.2d 109, 112 (App.1980) (allowing owner of similar property to testify as to value of property in issue).

. United States v. McCullah, 745 F.2d 350, 352 (6th Cir.1984) (permitting, in a prosecution for conspiracy to steal, transport, conceal, and resell a tractor, the testimony of a government agent describing the location of the tractor as "hidden" under some trees, since it was rationally based on the perception of the witness and helpful to a clear understanding of his testimony); United States v. Sweeney, 688 F.2d 1131, 1145-46 (7th Cir.1982) (concluding that a PCP and methamphetamine drug user could testify as to identity of said drugs based on his prior use and knowledge, his sampling of the substance, and the conclusion that the drug affected him in the same manner as it had before); State v. No Heart, 353 N.W.2d 43, 48 (S.D.1984) (holding that a police officer’s opinion that victim's injuries were caused not by a fist but by something sharper was properly admitted, given that distinction between a wound caused by a fist and a wound caused by a sharper object was within realm of an average person's experience).

. See, e.g., State Office Sys., Inc. v. Olivetti Corp. of America, 762 F.2d 843, 845-46 (10th Cir.1985) (permitting admission of testimony as to lost future profits from company’s president/treasurer with personal knowledge of company’s operations, sales, and profits); State v. Johnson, 221 Mont. 503, 719 P.2d 1248, 1256-57 (1986) (holding that, in a prosecution for driving under the influence of alcohol, a police officer was properly allowed to testify as a lay witness on the basis of his own experience as to what generally happens to a car when its power steering fails, where he had worked on vehicles of all kinds for over ten years and had experienced power steering failure several times); Schmidt v. J.C. Robinson Seed Co., 220 Neb. 344, 370 N.W.2d 103, 106 (1985) (holding that the trial court properly admitted, in a breach of contract action against a buyer of seed com, opinion testimony by the plaintiffiseed grower's witnesses concerning the effect of shat-tercane on the seed crop, where the opinions, which were helpful in determining the fact in issue, were rationally based on perceptions stemming from extensive field observation and personal farming experience); Hansen v. Skate Ranch, Inc., 97 N.M. 486, 641 P.2d 517, 522-23 (App.1982) (concluding, in a personal injury action arising from a fall at a roller skating rink, that the trial court properly admitted testimony of two lay witnesses, who 'were experienced skaters present on the night of the accident, regarding safety procedures used by the defendant on the night of the accident); Lee v. State, 661 P.2d 1345, 1354-55 (Okla.Crim.App.1983) (concluding that an investigating police officer could testify that spots on a carpet were blood, and that a chemist, testifying on other matters, could offer a lay opinion that the type of glass found at a murder location was safety glass); Williamson v. O’Neill, 696 S.W.2d 431 (Tex.Ct.App.1985) (holding that the driver of a tractor-trailer rig, a co-defendant in a personal injury lawsuit arising from-an auto-truck accident, was uniquely qualified, as the experienced driver of the rig involved in the accident, to offer a lay opinion as to the reason the trailer separated from the tractor, since his opinion would be rationally based on his firsthand perceptions of the accident and would help determine causation).

. For example, in United States v. Myers, 972 F.2d 1566, 1577 (11th Cir.1992), cert. denied, — U.S. -, 113 S.Ct. 1813, 123 L.Ed.2d 445 (1993), lay opinion testimony that burn marks were caused by a stun gun was held admissible based on the witness' personal perception of the burned skin and nineteen years of experience on the police force. The court noted that the opinion's lack of technical/medical basis could be exposed on cross-examination and affected the weight, not the admissibility, of the evidence.

. In particular, we find problematic the views of some courts which would appear to permit the firsthand knowledge of a lay witness in these and other technical areas to entirely diminish the need for the "knowledge, skill, experience, training or education” of a witness qualifying under Rule 702. For example, in United States v. Paiva, 892 F.2d 148, 155-57 (1st Cir.1989), where a lay witness who had used and tasted cocaine on many occasions testified that a substance tasted like cocaine, the First Circuit affirmed the admission of the evidence by the trial court, rejecting the argument that a lay witness cannot testify to such matters because only qualified experts can give such testimony. While the holding appears unexceptionable, the court unnecessarily declared that Rule 701 "blurred any rigid distinction that may have existed between” lay and expert testimony. Id. at 157. More refinement might have been in order.

. This unwillingness to find a strict prohibition on lay opinion testimony in technical matters is motivated, in no small part, by our inability to designate the testimony involved in prior caselaw as properly within the exclusive province of experts. Indeed, in some cases, courts have noted that the witness giving the lay opinion testimony might have qualified as an expert. See, e.g., Teen-Ed, 620 F.2d at 403 (accountant who gave lay opinion testimony might have qualified as expert); see also Williams Enters., Inc. v. Sherman R. Smoot Co., 938 F.2d 230, 233-34 (D.C.Cir.1991) (insurance broker, who might have been qualified as an expert, was properly permitted to testify that the construction collapse at issue may have contributed to a substantial increase in the plaintiff's insurance premiums); United States v. Fleishman, 684 F.2d 1329, 1335 (9th Cir.) (whether the testimony was lay or expert opinion, it was permissible for an undercover agent to testify that a defendant was acting as a lookout), cert. denied, 459 U.S. 1044, 103 S.Ct. 464, 74 L.Ed.2d 614 (1982).

. We believe, however, that such distinctions can and might well be made by the drafters of the Federal Rules, in that, as our discussion suggests, a better formulation of the lay opinion rule would perhaps eliminate these matters from the ambit of Rule 701. Such an approach has been adopted by some states, including Delaware, which provides:
If a witness is not testifying as an expert, his testimony about what he perceived may be in the form of inference and opinion, when:
(1) The witness cannot readily, and with equal accuracy and adequacy, communicate what he has perceived to the trier of fact without testifying in terms of inferences or opinions, and his use of inferences or opinions will not mislead the trier of fact to the prejudice of the objecting party; and
(2) The opinions and inferences do not require a special knowledge, skill, experience or training.
Del Uniform Rules of Evidence Rule 701 (emphasis added). Similar restrictions on lay opinion testimony have been adopted in both Florida and Tennessee. See Fla.Stat.Ann.Evidence Code § 90.701; Tenn R.Evid 701.
We take the liberty of commending this issue to the attention of the Judicial Conference Advisory Committee on Rules of Evidence, which monitors developments in evidence jurisprudence. See generally Edward R. Becker & Aviva Orenstein, The Federal Rules of Evidence After Sixteen Years — The Effect of "Plain Meaning” Jurisprudence, the Need for an Advisory Committee on the Rules of Evidence, and Suggestions for Selective Revisions of the Rules, 60 Geo. Wash.L.Rev. 857, 910 (1992). As the authors observed, state modifications in their adaptations of the Federal Rules can be quite instructive in providing "solutions to identified problems in the drafting or implementation of the Federal Rules.” Id. at 862 n. 18.

. The dissent’s assertion that our decision "is directly contrary to the teaching of Daubert which focused on the language of Rule 702” is simply inaccurate. Our conclusion that the trial judge should rigorously examine the reliability of the opinion, by ensuring that the witness possessed sufficient special knowledge or experience, derives ultimately, as we have stated, from the explicit requirements of Rule 701, which dictate that the lay opinion be "rationally based” on the witness’s observations and "helpful” to the jury.

. Such differences include the following: (1) designation of an opinion as "expert” by the court may cause the jury to give the "witness more attention and credence” then an opinion admitted from a "lay person” under Rule 701, Richey, supra, 154 F.R.D. at 544; and (2) the opinion of a lay witness must be based on his or her personal firsthand perception, while an expert may opine in response to hypothetical questions, see Teen-Ed, 620 F.2d at 404 ("The essential difference [between Rule 701 and 702], however, is that a qualified expert may answer hypothetical questions.”).

. Moreover, Teen-Ed is a case in which the witness would have qualified under Rule 702, but was precluded from testifying as an expert because Teen-Ed failed to list him as required in a pre-trial order. Id. ("We interpret the pre-trial ruling in this case to have required identification of expert witnesses under Rules 702 and 703, but not of lay witnesses under Rule 701.”).

. See also Eisenberg v. Gagnon, 766 F.2d 770 (3d Cir.) (involving a securities action where the plaintiffs claimed that the offering memoranda for certain limited partnerships were false and misleading), cert. denied, 474 U.S. 946, 106 S.Ct. 342, 88 L.Ed.2d 290 (1985). In Eisenberg, we held that an attorney had properly been permitted to testify as a lay witness with respect to "what he believed should have been included in one of the private offering memoranda and as to whether the memorandum complied with the applicable disclosure requirements." Id. at 780. We noted that the witness, a partner of one of the individual defendants and a principal in a law firm named as a defendant, had sufficient knowledge and experience as "a lawyer specializing in business litigation, who ha[d] also acted as general counsel for banks, trucking companies and brokerage houses.” Id.; see also id. ("Although he had represented clients in securities cases, and testified that he was familiar with the disclosure requirements of federal and state securities laws, he did not view himself as expert in the preparation of offering memoranda.”).

. The dissent contends that the district court did apply a correct legal standard under Rule 701 and would therefore review the district court’s decision to admit Jones’s testimony for abuse of discretion. We disagree, given that we conclude that the district court violated the “rationally derived” and "helpfulness” standards of Rule 701 in failing to examine with sufficient rigor the question of whether Jones possessed appropriate experience or knowledge to offer an opinion regarding the cause of metal failure and the proper design of hydraulic cylinders.

. See, e.g., Fusco v. General Motors Corp., 11 F.3d 259, 261 (1st Cir.1993); Marrocco v. General Motors Corp., 966 F.2d 220, 225 (7th Cir.1992); Salter v. Westra, 904 F.2d 1517, 1520 (11th Cir.1990); Grover Hill Grain Co. v. Baughman-Oster, Inc., 728 F.2d 784, 789 (6th Cir.1984); Southwire Co. v. Beloit Eastern Corp., 370 F.Supp. 842 (E.D.Pa.1974).

. The dissent asserts, infra at page 1211, that "Jones had substantial technical knowledge so as to tell whether metal is fatigued” but then fails to point to any evidence which would demonstrate that Jones had any knowledge or experience in assessing metal fatigue. Absent some evidence of such experience or knowledge, Jones's opinion was inadmissible under Rule 701 since it could not be rationally derived from his observations or “helpful" to the jury.

. As noted, Lasere’s bases for his opinion were:
(1) the design featured pointed step brackets resting on the fuel tanks; (2) the fuel tanks were near the cab and the engine; (3) the reasonable inference that this design had a tendency to cause punctures of the tanks in roll-over accidents; and (4) the fact that he found a simple way to make the design safer.